**Melvin Allan BOWEN, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 11–02–00350–CR.**

Court of Appeals of Texas,
Eastland.

Jan. 15, 2004.

---

Craig Willingham, Attorney At Law, Comanche, for appellant.

Melvin Allan Bowen, Huntsville, pro se.

Fred I. Franklin, Jr., Attorney At Law, Brownwood, for appellee.

Panel consists of: ARNOT, C.J., and WRIGHT, J., and TERRY McCALL, J.

Opinion

TERRY McCALL, Justice.

Melvin Allan Bowen was indicted for the offense of kidnapping. The trial court granted a mistrial to appellant in his first trial. To prevent a second trial, appellant sought a pretrial writ of habeas corpus in a separate action on the ground of double jeopardy under the Constitutions of the United States and Texas.[1] Citing *Bauder v. State*, 921 S.W.2d 696 (Tex.Cr.App. 1996), appellant claimed that the prosecutor had intentionally or recklessly forced him to move for the mistrial. The trial court denied his application for writ of habeas corpus, and appellant did not appeal that order. Appellant was convicted in the second jury trial of unlawful restraint, a lesser included offense of kidnapping. In his only issue on appeal, appellant again contends that his second trial was barred by double jeopardy because of

1. U.S. CONST. amend. V; TEX. CONST. art. I, § 14.

prosecutorial misconduct during the first trial. We affirm.

## Background Facts

The victim of the alleged kidnapping was a four-month-old baby girl. Appellant was the father of the victim; however, the parental rights of appellant and of Lori Ja Hunt, the mother, had been terminated in an earlier proceeding brought by Linda Stewart and her husband. That proceeding had been filed by the Stewarts to adopt the victim. Appellant's sister, Cynthia Wade, and her husband also wanted to adopt the baby and had intervened in that proceeding. The alleged kidnapping occurred before the trial court determined who should adopt the baby. The trial court had temporarily selected the Stewarts to have primary custody and the Wades to have visitation rights on weekends. Appellant took the baby, without either the Stewarts' or the Wades' consent, while she was with the Wades during a weekend visit. The trial court ultimately approved her adoption by Linda Stewart and her husband.

During the first trial, the prosecutor called Linda Stewart who testified about the termination of appellant's parental rights and her adoption of the child. Appellant's attorney cross-examined Linda Stewart about the order of termination. The prosecutor objected to the line of inquiry, contending that any testimony that went behind the earlier order of termination was irrelevant to the kidnapping trial. The trial court overruled the prosecutor's objection, and appellant's counsel then asked Linda Stewart:

> [D]o you remember who that other person was that was mentioned in court that [appellant] voluntarily left his child with?

Linda Stewart replied that "[appellant] did not voluntarily leave his child with anyone because he was in prison at the time." Appellant objected to her answer, contending that it was non-responsive and that it introduced evidence of extraneous offenses. The trial court instructed the jury to disregard the answer, but denied appellant's request for a mistrial.

After three more witnesses for the State testified, the prosecutor called Sergeant Bryan Thompson, an investigator for the Brown County Sheriff's Office. In response to the prosecutor's questions, Sergeant Thompson testified about the events that led to the officers finding appellant in possession of the child. The prosecutor's next question was: "What happened then?" Sergeant Thompson replied: "We placed him under arrest for outstanding parole violation warrant." Appellant objected to the response as being a violation of his motion in limine concerning extraneous offenses. Moving for a mistrial, appellant argued that the combination of the earlier testimony by Linda Stewart that appellant "was in prison" with Sergeant Thompson's answer so prejudiced appellant's rights that an instruction to disregard would not cure the prejudicial effect of Sergeant Thompson's answer. The trial court granted appellant's motion for a mistrial and, subsequently, denied his application for writ of habeas corpus in a separate action.

In the second trial, the jury convicted appellant of unlawful restraint, a lesser included offense of kidnapping. The conviction was enhanced by prior convictions to a second degree felony. Appellant's punishment was assessed at confinement for 20 years and a $10,000 fine.

## Analysis

■ The record reflects that appellant did not raise his double jeopardy objection in this case in the trial court. Prior to this second trial, however, appellant did seek a

pretrial writ of habeas corpus in a separate action, urging double jeopardy on the same ground that he urges in this appeal. A defendant may in a pretrial writ of habeas corpus proceeding raise and appeal a successive prosecutions claim before the trial of the indictment which he attacks. *Gonzalez v. State,* 8 S.W.3d 640, 643 n. 9 (Tex.Cr.App.2000). The court in *Ex parte Robinson,* 641 S.W.2d 552 (Tex.Cr.App. 1982), emphasized that a pretrial writ under Chapter 11 of the Texas Code of Criminal Procedure[2] is the mechanism to be utilized in seeking relief from exposure to double jeopardy because the claim of double jeopardy must be reviewable before that exposure occurs. *Ex parte Robinson, supra* at 553–55. A record of the trial court's hearing on appellant's application for writ of habeas corpus was filed with the record in this case. Appellant did not appeal the trial court's denial of his writ of habeas corpus.

■ We hold that it is too late for appellant to raise the concept of double jeopardy with this court. The cases of *Gonzalez v. State, supra,* and *Casey v. State,* 828 S.W.2d 214 (Tex.App.-Amarillo 1992, no pet'n), are instructive on when an appellant may raise double jeopardy for the first time on appeal. As the *Gonzalez* court pointed out:

> [A] double jeopardy claim may be raised for the first time on appeal or even for the first time on collateral attack when the undisputed facts show the double jeopardy violation is clearly apparent on the face of the record and when enforcement of usual rules of procedural default serves no legitimate state interests. Cases such as *Shaffer v.*

*State*[3] and *Ex parte Evans*[4] illustrate these principles.

*Gonzalez v. State, supra* at 643.

Here, the facts on which appellant bases his double jeopardy claim are clearly apparent on the face of the record; however, the enforcement of the usual rules of procedural default serve a legitimate state interest in this case. The same trial judge presided over appellant's first trial, denied appellant's application for writ of habeas corpus based on double jeopardy in the separate action, and presided over appellant's second trial. Appellant could have filed an immediate appeal of the trial court's denial of his application for writ of habeas corpus. *Gonzalez v. State, supra* at 643 n. 9; *Ex parte Robinson, supra* at 553–55.

If an appellate court had found that his double jeopardy claim was true, that would have precluded the waste of holding an unneeded second trial. *See Shaffer v. State, supra* at 875–76. The State has a valid interest in conserving valuable judicial time by not going through unnecessary trials when a double jeopardy claim is valid. *Gonzalez v. State, supra* at 646; *Casey v. State, supra* at 218. Requiring appellant to have timely pursued the appeal of his double jeopardy claim serves legitimate state interests and is consistent with the underlying policies of the general rules of procedural default. *Gonzalez v. State, supra* at 645. Because appellant could have appealed from the denial of his application for writ of habeas corpus, we hold that it is too late for appellant to again raise the concept of double jeopardy in this appeal.

---

2. TEX. CODE CRIM. PRO. ANN. ch. 11 (Vernon 1977 & Supp.2004).

3. *Shaffer v. State,* 477 S.W.2d 873 (Tex.Cr. App.1971).

4. *Ex parte Evans,* 530 S.W.2d 589 (Tex.Cr. App.1975).

■ Even assuming that the issue of double jeopardy were before us, we find that appellant has not shown that prosecutorial misconduct caused the mistrial. As in the habeas corpus hearing, appellant simply points out that Sergeant Thompson's testimony followed the chronology of events related in his written report and that the written report noted that Sergeant Thompson arrested appellant on the basis of a parole violation warrant. Based on the similar chronology of the testimony and the report, appellant argues that the prosecutor knew that Sergeant Thompson would make the response he did when asked: "What happened then?" Appellant also points out that the prosecutor failed to admonish the State's witnesses about appellant's motion in limine concerning extraneous offenses; therefore, the prosecutor must have intended for Sergeant Thompson to give the non-responsive answer that he gave.

■ There is no evidence in the record that Sergeant Thompson was looking at his report at the time or that the prosecutor was using the report to ask his questions. Culpable intent on the part of the prosecutor cannot be inferred from the fact that Sergeant Thompson was testifying about events chronologically and that the events had been written down in his report chronologically. Failure of the prosecutor to admonish the State's witnesses as to the requirements of a motion in limine does not mean that the prosecutor deliberately or recklessly caused the mistrial. Negligent conduct or sloppiness on the part of the prosecutor will not trigger double jeopardy protection. *Ex parte Peterson*, 117 S.W.3d 804, 817 (Tex. Cr.App.2003).

■ In *Ex parte Peterson, supra,* the court attempted to clarify the standards under which the Texas constitutional double jeopardy provision, as explained in *Bauder v. State, supra,* prohibits a retrial after the defense successfully requests a mistrial. Appellate courts analyzing a double jeopardy mistrial claim are to make the following three-part analysis:

(1) Did manifestly improper prosecutorial misconduct provoke the mistrial?

(2) Was the mistrial required because the prejudice produced from that misconduct could not be cured by an instruction to disregard?

(3) Did the prosecutor engage in that conduct with the intent to goad the defendant into requesting a mistrial[5] or with conscious disregard for a substantial risk that the trial court would be required to declare a mistrial[6]?

■ Appellant had the burden of proof to present sufficient evidence to prove his double jeopardy claim by a preponderance of the evidence. *Ex parte Peterson, supra* at 818. We cannot say from the record that appellant proved that manifestly improper prosecutorial misconduct provoked the mistrial. We will defer to the trial court's decision and assume that an instruction to disregard would not have cured the problem caused by Sergeant Thompson's testimony although violations of evidentiary rules are generally curable with an instruction to disregard. *State v. Lee*, 15 S.W.3d 921, 926 n. 8 (Tex.Cr.App. 2000).

Our decision rests primarily on the third part of the analysis required by *Ex parte Peterson, supra.* To determine whether the prosecutor intentionally or recklessly caused the mistrial, the *Peterson* court

---

5. The standard set forth in *Oregon v. Kennedy,* 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982).

6. The standard set forth in *Bauder v. State, supra.*

suggested some of the objective facts and circumstances that an appellate court might consider in assessing the prosecutor's *mens rea.* A review of those facts and circumstances supports our conclusion that the prosecution did not intentionally or recklessly cause the mistrial:

(1) Was the misconduct a reaction to abort the trial that was "going badly for the State"? The record did not demonstrate that the trial was "going badly for the State," nor did it reasonably appear that appellant would likely have obtained an acquittal in the first trial.

(2) Was the misconduct repeated despite admonitions from the trial court? The defense counsel's cross-examination of Linda Stewart elicited the first reference to appellant being in prison. Sergeant Thompson's non-responsive answer to the prosecutor's question ("What happened then?") was only the second reference to extraneous offenses.

(3) Did the prosecutor provide a reasonable, "good faith" explanation for the conduct? The prosecutor argued that appellant's application for writ of habeas corpus should be denied because the prosecutor was simply trying to have Sergeant Thompson "tell his story" by asking him: "What happened then?" The prosecutor's question, asked by trial lawyers in every trial, did not require the non-responsive answer that Sergeant Thompson gave.

(4) Was the conduct "clearly erroneous"? Asking "What happened then?" was not clearly erroneous.

(5) Was there a legally or factually plausible basis for the conduct, despite its ultimate impropriety? Having Sergeant Thompson testify to the chronology of events was a plausible basis for the prosecutor's question.

(6) Were the prosecutor's actions leading up to the mistrial consistent with inadvertence, lack of judgment, or negligence, or were they consistent with intentional or reckless misconduct? At most, the prosecutor was negligent in failing to remind Sergeant Thompson of appellant's motion in limine concerning extraneous acts.

Appellant has not carried his burden of demonstrating that the prosecutor intentionally or recklessly caused the mistrial. We hold that the record fails to show that prosecutorial misconduct caused the mistrial.

### *This Court's Ruling*

The judgment of the trial court is affirmed.