COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-01-133-CR
  
  
EX 
PARTE 


 
KRISTIN 
HOPE WHEELER
  
  
------------
 
FROM 
CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY
 
------------
 
OPINION ON REMAND
 
------------
        In 
November 2001, we issued our opinion reversing the trial court’s denial of 
habeas relief on direct appeal. Because we determined that the State knew or 
should have known that its question on fault findings in a separate insurance 
investigation would likely result in a mistrial, we granted appellant’s 
special plea on double jeopardy grounds. We rendered judgment granting appellant 
habeas relief and dismissed her case with prejudice to refiling because of the 
mistrial.
        On 
the State’s petition for review, the Texas Court of Criminal Appeals vacated 
our judgment and remanded the case to us for further review in light of its Peterson 
opinion, which was issued in 2003, after our earlier opinion. Ex Parte 
Peterson, 117 S.W.3d 804 (Tex. Crim. App. 2003). In Peterson, the 
court of criminal appeals clarified "the standards under which the Texas 
constitutional double jeopardy provision, as explained in Bauder v. State, 
prohibits retrial after the defense successfully requests a mistrial.” Id. 
at 807. The parties have rebriefed in light of the Peterson opinion, and 
we have resubmitted the case to apply the Peterson construct. Because we 
conclude that the record shows prosecutor misconduct that meets the Peterson 
three-prong analysis, we still reverse and render.
Facts
        On 
July 21, 1999, Dr. David Mitchell attempted to cross a rural road to access his 
mailbox as appellant drove down the same road at approximately sixty-five miles 
per hour. Appellant, traveling about twenty miles per hour over the speed limit, 
was unable to avoid striking Mitchell, who later died of the injuries he 
sustained. The grand jury indicted appellant in two counts for manslaughter and 
criminally negligent homicide. A visiting judge presided over the first trial, 
held in Criminal District Court Number One.
        During 
the first trial, both the State and appellant called accident reconstruction 
experts. The State extensively cross-examined and questioned appellant’s only 
witness, her expert, Alan Weckerling. After appellant passed the witness 
following a redirect, the following exchange took place:
THE 
COURT: Anything else?
[PROSECUTOR]: 
Yes, Your Honor - -
THE 
COURT: Thank you, sir. You may stand down.
[PROSECUTOR]: 
I have one more question, Judge.
THE 
COURT: I’m sorry. I misunderstood you.
FURTHER 
RECROSS-EXAMINATION
[PROSECUTOR:] 
Are you aware that her insurance carrier found her at fault?
                [DEFENSE]: 
Your Honor, may we approach?
THE 
COURT: You don’t have to approach. Send the jury out.

        (Jury 
not present)

                THE 
COURT: Is there a motion in limine on that?
[PROSECUTOR]: 
Only if she ever paid, Judge --
[DEFENSE]: 
Your Honor, they filed a motion in limine not to go into any of the insurance 
reports. They now have made a statement unsupported in bad faith to create a 
mistrial in this case.
 
                THE 
COURT: Do you want a mistrial?

        Appellant 
answered affirmatively. The visiting judge who had heard the entire case also 
heard the parties’ arguments a few days later and granted appellant’s motion 
for a mistrial. After the visiting judge’s appointment expired, the regular 
presiding judge of the court reset the case for a second trial the following 
month. At that time, appellant refiled her motion to dismiss with prejudice and 
filed a petition for a pretrial writ of habeas corpus. The visiting judge who 
presided over the first trial and the hearing on the mistrial did not hear the 
habeas petition. Instead, the trial court’s presiding judge heard the petition 
and denied relief. Our opinion, reversing and rendering in appellant’s favor, 
was vacated by the court of criminal appeals and is now before us again as 
explained above.
Double Jeopardy
         The 
double-jeopardy clause of the United States Constitution provides that no person 
shall be subjected to twice having life or limb in jeopardy for the same 
offense. U.S. Const. amend. V. 
This clause protects against (1) a second prosecution for the same offense after 
acquittal; (2) a second prosecution for the same offense after conviction; and 
(3) multiple punishments for the same offense. United States v. Dixon, 
509 U.S. 688, 695-96, 113 S. Ct. 2849, 2855-56 (1993); Ex parte Herron, 
790 S.W.2d 623, 624 (Tex. Crim. App. 1990) (op. on reh'g). The Texas and United 
States Constitutions' double jeopardy provisions provide substantially identical 
protections. Ex parte Mitchell, 977 S.W.2d 575, 580 (Tex. Crim. App. 
1997), cert. denied, 525 U.S. 873 (1998); Stephens v. State, 806 
S.W.2d 812, 815 (Tex. Crim. App. 1990), cert. denied, 502 U.S. 929 
(1991). Both constitutions are meant to restrain the government from subjecting 
persons accused of crimes to the mental, emotional, and financial hardship of 
repeated trials for the same offense. See Bauder v. State, 921 S.W.2d 
696, 698 (Tex. Crim. App. 1996) (Bauder I).
        A 
mistrial granted at the defendant's request in a criminal case, however, usually 
does not implicate double jeopardy prohibitions and poses no inhibition to 
further prosecution for the same offense in a new proceeding. United States 
v. Jorn, 400 U.S. 470, 485, 91 S. Ct. 547, 557 (1971); Torres v. State, 
614 S.W.2d 436, 441 (Tex. Crim. App. [Panel Op.] 1981). Essentially, we view a 
defendant's motion for mistrial as a deliberate election on her part to forgo 
her right to have her guilt or innocence determined before the first trier of 
fact. Oregon v. Kennedy, 456 U.S. 667, 676, 102 S. Ct. 2083, 2089 (1982); 
United States v. Scott, 437 U.S. 82, 93, 98 S. Ct. 2187, 2195 (1978).
        When 
a mistrial is declared because of improper actions of the prosecutor, however, 
the double jeopardy prohibition may bar a second prosecution even if the 
defendant has consented to the mistrial. Peterson, 117 S.W.3d at 811. It 
is well settled under the federal constitution that the Fifth Amendment does not 
allow successive prosecutions for the same offense when the earlier proceeding 
was terminated at the defendant's request because the attorney representing the 
government deliberately provoked the defendant's motion for mistrial. U.S. Const. amend. V; see Kennedy, 456 U.S. at 
676, 102 S. Ct. at 2195. The Texas Constitution goes a step beyond the 
protection provided under its federal counterpart and prohibits a subsequent 
trial when the prosecutor caused the mistrial either intentionally or 
recklessly. See Ex parte Bauder, 974 S.W.2d 729, 731 (Tex. Crim. App. 
1998) (Bauder II); Bauder I, 921 S.W.2d at 697; see 
also Tex. Const. art. I, § 
14. The court of criminal appeals announced in Bauder I that a subsequent 
prosecution is jeopardy-barred by the Texas Constitution after declaration of a 
mistrial when objectionable conduct of the prosecuting attorney was intended to 
induce a motion for mistrial or if "the prosecutor was aware but 
consciously disregarded the risk that an objectionable event for which he was 
responsible would require a mistrial at the defendant's request." Bauder 
I, 921 S.W.2d at 699.
        In 
Bauder II, the court of criminal appeals clarified the application of the 
prosecutor-misconduct bar to retrial, determining that the only question under 
the Texas Constitution's double-jeopardy clause is whether the defendant truly 
consented to, or deliberately elected, the mistrial. Bauder II, 974 
S.W.2d at 731-32. Bauder II directs that in a case where a mistrial has 
resulted from prosecutorial action, weighing the following two options will 
illustrate whether the defendant voluntarily consented to the mistrial and 
should be subject to retrial:
 
[O]n 
the one hand, whether the appellant's motion for mistrial was a choice he made 
in response to ordinary reversible error in order to avoid conviction, appeal, 
reversal, and retrial. Or, on the other hand, was he required to move for 
mistrial because the prosecutor deliberately or recklessly crossed "the 
line between legitimate adversarial gamesmanship and manifestly improper 
methods" that rendered trial before the jury unfair to such a degree that 
no judicial admonishment could have cured it?

 
Id. 
at 732 (citation omitted) (quoting Bauder I, 921 S.W.2d at 700).
        Then, 
in State v. Lee, another double jeopardy-mistrial case but one in which 
both the trial court and the intermediate appellate court granted habeas relief 
on double jeopardy grounds, the State urged the court of criminal appeals to 
abandon its more expansive interpretation of the Texas constitutional 
prohibition against double jeopardy, but the court declined its offer. 15 S.W.3d 
921, 922 n.1 (Tex. Crim. App. 2000) (dismissing State Prosecuting Attorney's 
grounds for review because district attorney's grounds were dispositive). 
Instead, the court emphasized that trial courts are to find a double jeopardy 
violation only under the standard articulated in Bauder II, i.e. when a 
defendant is required to move for a mistrial “because the prosecutor 
deliberately or recklessly crossed ‘the line between legitimate adversarial 
gamesmanship and manifestly improper methods’ that rendered trial before the 
jury unfair to such a degree that no judicial admonishment could have cured 
it." Bauder II, 974 S.W.2d at 732 (citation omitted) (quoting Bauder 
I, 921 S.W.2d at 700); see also Lee, 15 S.W.3d at 924.
        Under 
Lee, “if the prosecutor has a ‘legitimate’ view of the law (or of 
the facts), even if that view is ultimately incorrect, his actions cannot be 
considered intentional or reckless misconduct.” Peterson, 117 S.W.3d at 
816 (quoting Lee, 15 S.W.3d at 924). Thus, in Peterson, the court 
of criminal appeals concluded that the “prosecutor’s mens rea is 
pivotal.” Id. at 815. Looking to the United States Supreme Court 
opinion in Kennedy, the court of criminal appeals noted that under the Kennedy 
line of cases, the "critical inquiry is whether the prosecutor’s 
misconduct intended to goad the defendant into requesting a mistrial, and under Bauder 
. . . a prosecutor must at least be aware that his manifestly improper 
misconduct is likely to result in a mistrial, but he nonetheless consciously 
ignores that likelihood and commits the misconduct.” Id. at 816. See 
generally Kennedy, 456 U.S. at 675-76, 102 S. Ct. at 2089 (discussing intent 
of prosecutor and prosecutorial conduct in determining whether double jeopardy 
bars retrial). In Peterson, the court blended the Kennedy, Bauder, and 
Lee tests and held that the trial and appellate courts of Texas are to 
analyze a double jeopardy claim under the following three-part analysis:
  
        1) 
   Did manifestly improper prosecutorial misconduct 
provoke the mistrial?
        2) 
    Was the mistrial required because the 
prejudice produced from that misconduct could not be cured by an instruction to 
disregard?
        3) 
    Did the prosecutor engage in that conduct 
with the intent to goad the defendant into requesting a mistrial (Kennedy 
standard) or with conscious disregard for a substantial risk that the trial 
court would be required to declare a mistrial (Bauder standard)?

 
Peterson, 
117 S.W.3d at 816-17.
Standard of Review
        When 
raising a double jeopardy claim on pretrial writ of habeas corpus, the applicant 
bears the burden of proof under a preponderance of the evidence standard in the 
trial court. Id. at 818 (citing Ex parte Kimes, 872 S.W.2d 700, 
703 (Tex. Crim. App. 1993) and Ex parte Adams, 768 S.W.2d 281, 287-88 
(Tex. Crim. App. 1989)). When we review a trial court's decision to grant or 
deny relief on a writ of habeas corpus, we review the “facts in the light most 
favorable to the trial judge’s ruling and should uphold it absent an abuse of 
discretion.” Id. at 819; accord Ex parte Mann, 34 S.W.3d 716, 
718 (Tex. App.—Fort Worth 2000, no pet.); Ex parte Primrose, 950 S.W.2d 
775, 778 (Tex. App.—Fort Worth 1997, pet. ref'd). We should “afford almost 
total deference to a trial court’s determination of the historical facts that 
the record supports especially when the trial court’s fact findings are based 
on an evaluation of credibility and demeanor.” Peterson, 117 S.W.3d at 
819 (citing Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)).
        However, 
“an abuse of discretion review of trial court decisions is not necessarily 
appropriate in the context of the application of law to facts when the decision 
does not turn on the credibility or demeanor of witnesses." Ex parte 
Martin, 6 S.W.3d 524, 526 (Tex. Crim. App. 1999). Instead, an appellate 
court must conduct a de novo review when "the trial judge is not in an 
appreciably better position than the reviewing court to make that 
determination." Guzman, 955 S.W.2d at 87; see also Mann, 34 
S.W.3d at 718. “Although reviewing courts should also grant deference to 
‘implicit factual findings’ that support the trial court’s ultimate 
ruling, they cannot do so if they are unable to determine from the record what 
the trial court’s implied factual findings are.” Peterson, 117 S.W.3d 
at 819. Reviewing courts are to review “de novo those mixed questions 
of law and fact that do not depend upon credibility and demeanor.” Id. 
(citing Guzman, 955 S.W.2d at 89). In Peterson, the court of 
criminal appeals reviewed its opinions in Bauder I, Bauder II, and Lee 
and again declined to overrule its Bauder line of cases.
Analysis
        In 
this case, neither party offered testimony on the merits of the petition at the 
habeas hearing; the parties had previously presented their arguments for and in 
opposition to granting a mistrial and dismissal with prejudice at the mistrial 
hearing held by the visiting judge. That judge granted appellant’s motion, and 
the arguments and record from that hearing were offered into evidence at the 
writ hearing. However, the presiding judge, who ultimately heard the petition, 
was not the same judge who that presided over appellant’s first trial and 
granted the mistrial. Thus, the trial court’s rulings at the habeas hearing 
could not have turned on credibility and demeanor.[1]  
Because the presiding judge who heard and ruled on the habeas petition was not 
in any better position to determine questions of fact and to apply the law to 
those facts than we would be, we will undertake a de novo review applying the 
new Peterson three-prong analysis. See Peterson, 117 S.W.3d at 
816-17; Guzman, 955 S.W.2d at 87. Further, our review of what the habeas 
judge did necessarily includes a review of what the visiting judge, who presided 
over the trial and granted the mistrial, did. Because the visiting judge’s 
ruling is in the record and includes some findings and conclusions, we will 
review his ruling under an abuse of discretion standard.[2]
1) Did Manifestly Improper Prosecutorial Misconduct 
Provoke The Mistrial?
        Under 
this prong of the Peterson analysis, we must focus on whether misconduct 
occurred and whether that misconduct caused the defense to request a mistrial. Bauder 
I teaches us that courts should narrowly interpret the “objective facts 
and circumstances of the prosecutor’s conduct and the events which led to that 
conduct” in determining whether prosecutorial misconduct actually occurred. Peterson, 
117 S.W.3d at 814-15. Further, we are to look at whether the defendant was 
compelled to request a mistrial because she was denied her free choice of 
requesting a mistrial. Id. at 816.
        After 
several redirects and recrosses and long after the State had already informed 
the court that it had only one more question, the prosecutor asked one more 
question of appellant’s expert witness: “Are you aware that her insurance 
carrier found her at fault?” Appellant’s counsel immediately asked to 
approach the bench. The court immediately said that approaching the bench was 
unnecessary and ordered the jury removed. The court asked if appellant wanted a 
mistrial even before appellant could articulate her objection. The court took 
appellant’s motion for mistrial under advisement and reconvened court the 
following Monday to hear counsels’ arguments and to rule on the motion. The 
court recalled the specific question that the prosecutor asked appellant’s 
expert witness, “Are you aware that her insurance carrier found her at 
fault?”
        In 
support of her claim for mistrial and a dismissal with prejudice, appellant’s 
counsel reminded the court of the pretrial motions in limine that both sides had 
filed and that had been granted by the trial court. Both sides had obtained a 
limine order prohibiting either from asking any witness for declarations or 
statements made by someone other than the witness or asking for opinions from 
witnesses that were not expert witnesses. An earlier question asked by the State 
of its expert revealed only that there was insurance on the 
Mustang—appellant’s car that was involved in the wreck. No prior question of 
fault had been asked or answered in regard to an insurance investigation or the 
results of any such investigation despite the prosecutor’s representations to 
the court that the defense had “opened the door.”
        In 
its brief on remand, the State cites to this court’s prior opinion and the 
habeas record as proof that the defense (or the State, for that matter) had 
“opened the door” to the insurance/fault question. However, the State is 
citing only to its own previous arguments made to the habeas judge, that 
the “door had been opened” by someone. The State fails to cite in its brief, 
and failed to cite to the habeas judge any record references proving that the 
door to a third party or other fault determination had been opened. The State 
points to only two places in the record where it contends the “door was 
opened.” It points to its expert’s testimony, in which its expert 
testified on direct that he had looked at the insurance report, and to 
appellant’s expert’s testimony.
        First, 
the State’s expert testified that he looked at the report only in regard to 
repairs on the Mustang involved in the wreck. Second, the State references 
defense expert testimony that does not even exist. There is no page 168 
contained in the seventh volume of the reporter’s record. Regardless, the 
record actually discloses the opposite in regard to testimony by the defense 
expert: when the State asked Dr. Wecklerling if he had reviewed any other 
investigations by an insurance company or other individuals, he acknowledged the 
existence of “something” in the materials that were provided to him but 
specifically stated he had not reviewed them. The only testimony that 
relates to insurance was given by the State’s expert, Tim Lovett, who said he 
had reviewed a State Farm investigative report in connection with the “repair 
of the Mustang” involved in the accident. At this point, the State neither 
asked for nor did the witness supply any determination on fault by any insurance 
company. This hardly opens the door to fault, a question that goes directly to 
the heart of this cause.
        As 
we noted in our prior opinion, the only issue for this jury to decide was 
whether the victim was at fault, or whether appellant was at fault and, if so, 
with what mental state so as to determine whether manslaughter or criminally 
negligent homicide was the appropriate offense. In other words, because 
appellant had never denied that she was the person driving the vehicle that 
struck the victim, the focus of the entire trial was who was at fault. The 
visiting judge’s findings or conclusions on the record make this clear:
 
There 
is one issue in this case and that’s who is at fault.  The defendant . . 
. or the deceased.  Both sides knew as of Thursday I told you all I was 
going to instruct the jury on concurrent cause that could have allowed the jury 
if they decided to do so based on the evidence and the law found the defendant 
not guilty assuming they found beyond a reasonable doubt the [deceased] was 
guilty to start with.  So the only issue in this case was fault.  This 
question goes right to that. It is not a collateral question [sic] not a 
collateral issue.

 
        Additionally, 
the rules of evidence prohibit the admission of evidence of insurance coverage. Tex. R. Evid. 411. The rules of evidence 
clearly do not allow evidence of insurance coverage to be introduced in most 
circumstances. Id. ("Evidence that a person was or was not insured 
against liability is not admissible upon the issue of whether the person acted 
negligently or otherwise wrongfully."). Appellant specifically raised the 
applicability of rule 411 of the rules of evidence at the hearing on the motion 
for mistrial. Appellant noted that the question of whether a person acts 
“negligently or otherwise wrongfully” is basically the same question the 
jury would have to decide if the jury had found appellant at fault as opposed to 
the victim. Manslaughter is defined as “recklessly caus[ing] the death of an 
individual,” and “criminally negligent homicide” is defined as 
“caus[ing] the death of an individual by criminal negligence.” Tex. Penal Code Ann. §§ 6.03(d), 
19.04(a), 19.05(a), (Vernon 2003). Because the charges of manslaughter and 
criminally negligent homicide would fit within rule 411's confines of when a 
person acts negligently or otherwise wrongfully, we conclude and hold that rule 
411 of the rules of evidence applies equally to criminal cases in which a 
defendant has been charged with the offenses of manslaughter and criminally 
negligent homicide.
        On 
remand, the State further contends that the prosecutor could not be held to have 
known that evidence of insurance liability findings was inadmissible because 
there is no criminal case construing or applying rule 411 to a criminal case. See 
Dennis v. Hulse, 362 S.W.2d 308, 309 (Tex. 1962); Beall v. Ditmore, 
867 S.W.2d 791, 795 (Tex. App.—El Paso 1993, writ denied) (both holding that 
the mere mention of insurance does not necessarily result in a mistrial). This 
argument is not persuasive, however, because the court of criminal appeals 
specifically adopted the combined, joint set of rules of evidence on February 
25, 1998, and they went into effect March 1, 1998. 960 S.W.2d (Tex. Cases) XXX.  
Also, the rules themselves specifically state that unless provided otherwise by 
statute, the rules of evidence apply and govern all civil and criminal 
proceedings. Tex. R. Evid. 101(b). 
The rules further direct that the rules should be construed to “secure 
fairness in administration . . . and promotion of growth and development of the 
law of evidence to the end that the truth may be ascertained and proceedings 
justly determined.” Tex. R. Evid. 
102. We have found no cases, and the State cites none, that would support the 
proposition that a rule of evidence or procedure, or a statute, previously 
adopted and effective, does not apply simply because no court has yet ruled that 
it should apply. If that were the appropriate prerequisite to the application of 
rules or statutes, then no statute would ever be in effect until we, the courts, 
had so stated.
        In 
this case, the prosecutor’s question did not merely mention the existence of 
insurance; rather, the question addresses insurance coverage in the context of a 
fault finding. Not only should the prosecutor have known that rule 411 prohibits 
the mention of insurance coverage in this context, he should also have known 
that, given the timing and subject matter of the question, the prejudicial 
effect of the evidence would far outweigh any probative value under a rule 403 
analysis.[3] Tex. R. Evid. 403 (providing that 
otherwise relevant evidence may be excluded if its probative value is 
substantially outweighed by a danger of unfair prejudice). Additionally, the 
question, as phrased, asks not if some insurance company had found 
appellant at fault, but whether the witness knew that appellant’s insurance 
company had found her at fault. The effect of a question asking whether the 
witness knew that, not if, appellant’s own insurance company 
found her at fault is particularly troubling because it implies that the one 
entity that would normally be supporting appellant had already decided to do 
otherwise.
        We 
therefore conclude that the prosecution’s question was not only manifestly 
improper, just as the visiting trial judge had found, but also was the catalyst 
that provoked the mistrial. We turn to the next Peterson question.

2) Was The Mistrial Required Because The Prejudice 
Produced From That
Misconduct Could Not Be Cured By An Instruction To 
Disregard?
 
        This 
prong of the Peterson analysis requires us to look at whether the 
mistrial was required because the line the prosecutor crossed rendered the trial 
before the jury so unfair that no judicial admonishment or instruction could 
have cured the prejudice or harm that resulted from it. Peterson, 117 
S.W.3d at 816. In other words, we must determine whether an instruction to the 
jury to disregard the error could have overcome any harm that resulted from the 
prosecutor’s misconduct. Id. We defer to the trial court's conclusion 
on whether an instruction to disregard would have cured the problem. See 
Bowen v. State, 131 S.W.3d 505, 509 (Tex. App.—Eastland 2004, pet. filed).
        The 
State points us to Waldo v. State for some nonexclusive factors the trial 
court and the appellate court may consider in determining whether a curative 
instruction would cure the harm: (1) the nature of the error; (2) the 
persistence of the prosecutor; (3) the flagrancy of the violation; (4) the 
particular instruction given; (5) the weight of the incriminating evidence; and 
(6) the harm to the accused as measured by the severity of the sentence. 746 
S.W.2d 750, 754 (Tex. Crim. App. 1988).
        For 
instance, the prosecutor’s misconduct was so obvious that the court told 
defense counsel he did not even need to approach the bench and, on its own, 
instructed the jury to be removed from the courtroom. And, immediately upon its 
removal, the judge asked appellant, before she had made any legal arguments, if 
she wanted a mistrial. It is thus clear, from the record before us, that the 
trial court quickly and immediately decided the prosecution had used improper 
methods or conduct in its cross-examination of appellant’s last witness. But, 
the court held its decision on the mistrial and then recessed over the weekend, 
instructing the parties to return the next Monday to argue their positions and 
the law regarding the proper remedy for the prosecutor’s misconduct.[4]
        At 
the hearing the next Monday, appellant focused the trial court’s attention on 
the inefficacy of a curative instruction, especially in a case before a jury 
where a defendant’s negligence or reckless disregard is sufficient for a 
conviction. Appellant argued that failure to grant the dismissal with prejudice 
would be tantamount to shifting the burden to the defense in light of the 
prosecutor’s statement about the insurance company’s fault finding. Further, 
appellant pointed to the rule 411 violation, discussed infra, as well as 
the way the question was asked. The prosecutor asked the question as if it were 
a statement of fact as opposed to the more generic “have you heard 
question.”
        In 
response, the State argued simply that the only “evil complained of in this 
case is a violation of rule 411” and that we are to presume that an 
instruction to disregard will cure any prejudice resulting from an improper 
remark or question. However, the “evil” before us is more than just either 
one of the foregoing; it is the combination of both a question that asks an 
expert to testify on improper evidence combined with a question that presupposes 
the answer that makes the question itself so prejudicial. Not only was the 
question improper because it asked for inadmissible evidence, but the question 
itself also disclosed inadmissible evidence because the prosecutor asked the 
question in a way that conveyed the actual insurance investigation result. Thus, 
the nature of the error is great.
        Likewise, 
we can also conclude that the prosecutor’s conduct was flagrant and weighty. 
As we have noted above, the question came several questions after the prosecutor 
had already notified the court that he had only one more question. And, as also 
mentioned, the trial judge sua sponte removed the jury and asked if the 
defense wanted a mistrial, which is another indication of the court’s 
perception of the flagrancy of the prosecutor’s action. The State also 
contends that this action by the trial judge demonstrates that the judge was 
“overly quick to declare a mistrial.” The State characterizes the trial 
judge’s question as a “reckless declaration” of mistrial. However, the 
State ignores the fact that the trial judge did not immediately declare a 
mistrial. In fact, the judge removed the jury, explained on the record his 
concerns to counsel, and requested briefing and arguments after recessing over 
the weekend. The judge did not rule on the mistrial until he had conducted 
independent research, listened to counsels’ arguments, and concluded the 
hearing on the following Monday. This cannot be construed as a hasty decision on 
the part of the visiting judge and actually reflects the flagrancy of the 
misconduct as well as its significance and weight.
        Under 
the objective facts and circumstances presented in this record, we conclude that 
no instruction could have cured the prejudice that must have flowed from the 
prosecutor’s question revealing that appellant’s own insurance company had 
found her at fault—again, the key issue of the case.
3) Did The Prosecutor Engage In Conduct With The 
Intent To Goad The
Defendant Into Requesting A Mistrial (Kennedy 
Standard) Or With Conscious
Disregard For A Substantial Risk That The Trial Court 
Would Be Required To
Declare A Mistrial (Bauder Standard)?

 
        In 
addressing the third Peterson prong, the court of criminal appeals also 
instructs us that we should consider the following, where applicable:
 
1) 
Was the misconduct a reaction to abort a trial that was “going badly for the 
State?” In other words, at the time that the prosecutor acted, did it 
reasonably appear that the defendant would likely obtain an acquittal?
 
2) 
Was the misconduct repeated despite admonitions from the trial court?
 
3) 
Did the prosecutor provide a reasonable, “good faith” explanation for the 
conduct?
 
4) 
Was the conduct "clearly erroneous"?
 
5) 
Was there a legally or factually plausible basis for the conduct, despite its 
ultimate impropriety?
 
6) 
Were the prosecutor’s actions leading up to the mistrial consistent with 
inadvertence, lack of judgment, or negligence, or were they consistent with 
intentional or reckless misconduct?

 
Peterson, 
117 S.W.3d at 818-19 (footnotes omitted); see also State v. Easton, 123 
S.W.3d 675, 681 (Tex. App.—Dallas 2003, no pet.)
a) Trial Going Badly for the State?
        The 
State says that the trial was going well. In making this claim, the State cites 
only to its expert’s testimony on direct. The State’s evaluation of its case 
in its brief on remand includes a review of the status of its case based only 
upon its expert’s testimony; its evaluation fails to take into account the 
fact that appellant had not yet presented her case.
        Further, 
the State points only to its expert’s testimony concluding that appellant was 
speeding and that she had failed to control the vehicle and timely apply her 
brakes. In its brief, the State fails to re-evaluate its case after the defense 
had put on its case, in which the defense expert testified that appellant’s 
speed was immaterial because the victim stepped into the road without yielding 
to vehicles even though he was not at a street crossing. According to the 
defense witness, a pedestrian is supposed to yield to traffic when not crossing 
at a designated crossing.
        Although 
the State concedes that the case was a “battle of the experts” and that 
expert testimony was critical to the causation or fault issue, we also know from 
the hearing on the motion for mistrial that the visiting judge had already 
notified the parties the day before the prosecutor asked the improper question 
that he was going to give the jury the “concurrent cause” question. This 
question would ask who was at fault before even asking the jury whether 
appellant had the requisite mental intent required for conviction. In light of 
this, we therefore conclude that the trial was going badly for the State.
b) Did the State repeat its misconduct despite 
admonitions from the Court?
        Again, 
the State argues that neither of the motions in limine, which would have 
required counsel to approach the bench before questioning any witness on covered 
items, prohibited mentioning liability insurance. However, as discussed above, 
the State’s own limine order prohibited both counsel from asking a witness to 
testify about another’s conclusions or testimony. And, appellant’s limine 
order also prohibited asking about any settlements. While the orders are not 
examples of clarity, one could at least conclude that neither party was supposed 
to go into opinion testimony of any other person not on the witness stand 
without first approaching the bench.
        The 
State also points to the two references to insurance as if the fault issue were 
already before the jury. There are only two places in the record that mention 
insurance: first, the question the State asked its expert about what he 
reviewed, which referenced insurance in general in regard to the Mustang; and 
second, the question the State asked appellant’s expert, which ultimately 
caused the mistrial. Again, these references did not open the door to further 
questions and did not mean that any pending limine orders had been waived. Thus, 
we conclude the State repeated its misconduct when viewed in light of the 
pre-existing limine orders.

c) Did the prosecutor provide a reasonable, good faith 
explanation for the conduct?
 
        In 
response to the court’s question to the prosecutor as to why he asked the last 
question after already cross-examining the witness for three hours, he said, 
“Judge, I got to ask it sometime.” Without more of an explanation, this 
cannot be considered a reasonable, good faith explanation for the conduct, and 
neither were the other arguments the State made at the hearing addressed 
elsewhere in this section.
d) Was the conduct “clearly erroneous?”
        The 
prosecutor argued that he had the right to cross-examine the defense’s expert 
because the witness was an expert and, under rule 702, experts are allowed to be 
impeached by and cross-examined on anything they have reviewed. Tex. R. Evid. 702. However, as we know 
from the record, the defense expert had never reviewed the insurance file the 
prosecutor asked about; he just knew it was there. Therefore, a question asking 
the defense expert about the content and result of an insurance investigation 
that he had never reviewed was clearly erroneous.
e) Was there a legally or factually plausible basis 
for the conduct, despite its ultimate impropriety?
 
        The 
prosecutor’s 702 argument could be applicable to this inquiry except for its 
inapplicability on this record as explained above under our "clearly 
erroneous" analysis. Likewise, we have already dispensed with the State’s 
arguments regarding the inapplicability of rule 411. Therefore, we cannot 
conclude there was a legally or factually plausible basis for the conduct.

f) Were the prosecutor’s actions leading up to the 
mistrial consistent with inadvertence, lack of judgment, or negligence, or were 
they consistent with intentional or reckless misconduct?
 
        Appellant, 
on trial for manslaughter and criminally negligent homicide, did not dispute 
that she drove the car that struck the victim, so the only question before the 
jury was whether the victim or appellant was at fault. The prosecutor's question 
asking the defense expert’s knowledge of the results of an insurance 
investigation, despite knowing that he had not reviewed the contents of the 
report and that he only knew that it dealt with insurance on the car involved, 
both disclosed the existence of insurance coverage and informed the jury that 
others had independently determined that appellant had acted negligently or 
recklessly.
        Likewise, 
the prosecutor's explanation for asking the question—"Judge, I got to ask 
it sometime"—also shows that the prosecutor had actually planned on 
asking the question. From this, we can only conclude that the prosecutor engaged 
in this conduct with at least a conscious disregard for a substantial risk that 
the trial court would be required to declare a mistrial. For this reason, we 
conclude that the prosecutor had the requisite mens rea such that when he 
crossed the line he knew or was aware that this last question was improper and 
could result in a mistrial, yet he proceeded to ask the question anyway. See 
Ex parte Twine, 111 S.W.3d 664, 669 (Tex. App.—Fort Worth 2003, pet. ref'd).
        In 
light of this, we do not believe the visiting judge abused his discretion when 
he granted the mistrial. The visiting judge who heard the case and viewed the 
buildup before the question knew when the prosecution had “kicked the dog” 
as opposed to “stumbling over it.” See Peterson, 117 S.W.3d at 814, 
818. We do, however, conclude that the court hearing the writ later abused its 
discretion in denying appellant’s double jeopardy plea.
Conclusion
        We 
hold that the prosecutor, necessarily being acquainted with our rules of 
evidence, should have known that his question crossed "the line between 
legitimate adversarial gamesmanship and manifestly improper methods" and 
created a substantial risk that a mistrial would result. Bauder II, 974 
S.W.2d at 732. Having held that the prosecutor intentionally or recklessly 
caused the trial to end in a mistrial, we sustain appellant’s sole point.
        Because 
the prohibition against double jeopardy bars a second prosecution of appellant 
under the manslaughter and criminally negligent homicide indictment, we reverse 
the order of the trial court and render judgment dismissing the case with 
prejudice. See Tex. R. App. P. 
43.2(c).
  
  
                                                                  TERRIE 
LIVINGSTON
                                                                  JUSTICE
  
 
PANEL 
A:   LIVINGSTON, DAUPHINOT, and WALKER, JJ.
 
PUBLISH
 
DELIVERED: 
July 22, 2004


NOTES
1.  
The State argues that because the habeas judge stayed in contact with the 
visiting judge who presided over appellant’s trial while the trial progressed, 
because the habeas judge read the record, and because the prosecutor regularly 
appears before the habeas judge, the habeas judge was, somehow, in a position to 
gauge the credibility of the prosecutor’s explanations at the hearing on the 
motion for a mistrial.  However, the State cites, and we have located, no 
authority that allows a judge to assess the credibility and demeanor of 
witnesses remotely.  In contrast, the visiting judge who presided over the 
entire trial was in a better position to make credibility determinations and 
weigh the harm caused by the error.  Therefore, we should give, and the 
presiding judge should have given, more deference to the visiting judge’s 
findings and conclusions.  This is particularly true if we accept the 
State’s position that its “arguments” at the mistrial hearing may also be 
considered testimony.
2.  
The visiting/presiding judge’s findings and conclusions must be reviewed 
because they relate specifically to so many of the Peterson factor 
determinations we must make.  The court's verbal rulings on the record 
reflect the court's findings and conclusions.  If the court of criminal 
appeals concludes that these findings and conclusions are insufficient to our 
review of the "objective facts and circumstances surrounding the event 
which led to the mistrial," we would abate to the trial court for an 
abatement hearing.  See Peterson, 117 S.W.3d at 818; see also 
Wead v. State, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004).
3.  
The prosecutor asked this question as the last question of the last witness on 
the last day of the lengthy jury trial.
4.  
We point out that the visiting judge gave the parties the opportunity to present 
the law and arguments for and against the mistrial because the State on remand 
accuses the visiting judge of making a “reckless decision” for a 
mistrial.  Obviously, the State was mistaken.