**Ex parte Robbie Marvin ROBINSON.**

**No. 68439.**

Court of Criminal Appeals of Texas,
Panel No. 1.

Nov. 24, 1982.

Floyd D. Holder, Jr., Lubbock, for appellant.

Robert Huttash, State's Atty. and Alfred Walker, Asst. State's Atty., Austin, for the State.

Before ROBERTS, CLINTON and McCORMICK, JJ.

## OPINION

ROBERTS, Judge.

This appeal is taken from an order of the district court which denied habeas corpus relief. The appellant presented evidence that on March 24, 1981, he was brought before a justice of the peace for an examining trial on accusations of unlawful carrying of a weapon on licensed premises and aggravated assault, that the State and he each presented one witness at the examining trial, that the magistrate "found no probable cause to bind him over for grand jury" and discharged him, that on May 15, 1981, he was indicted for the same offenses, and that he had "made bond," in an amount shown by the record to be $5,000. He argues that he is unlawfully restrained in violation of the Fifth and Fourteenth Amendments to the United States Constitution, more specifically under that doctrine of double jeopardy law known as collateral estoppel.[1]

Before we reach the double jeopardy question, we must address two procedural issues. One is whether the appellant was entitled to a writ of habeas corpus. "The writ of habeas corpus is the remedy to be used when any person is restrained in his liberty." V.A.C.C.P. Article 11.01. A person who is subject to the conditions of a bond is restrained in his liberty within the meaning of Article 11.01. *Ex parte Trillo,*

---

1. In his brief the appellant seeks to invoke Tex.Const. Art. I, § 14, as well. He did not rely on it below, so the invocation is too late.

540 S.W.2d 728, 731 (Tex.Cr.App.1976).[2] Since a felony indictment had been returned, the appellant was correct in obtaining a writ which was made returnable in the county where the offenses allegedly had been committed. V.A.C.C.P. Article 11.07, Section 1.[3]

The other procedural issue is whether the appellant may raise and appeal his double jeopardy claim before the trial of the indictment which he attacks. In *Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977), the Court considered whether a pretrial denial of a motion to dismiss an indictment on double jeopardy grounds was immediately appealable. It held that it was appealable, not only because it was what the jurisdictional statute (28 U.S.C. § 1291) calls a "final decision" (i.e., a fully consummated decision) which was collateral to, and separable from, the issue of guilt at the pending trial, but also because of the constitutional requirements of the Fifth Amendment:

"Finally, the rights conferred on a criminal accused by the Double Jeopardy Clause would be significantly undermined if appellate review of double jeopardy claims were postponed until after conviction and sentence. To be sure, the Double Jeopardy Clause protects an individual against being twice convicted for the same crime, and that aspect of the right can be fully vindicated on an appeal following final judgment, as the Government suggests. However, the Court has long recognized that the Double Jeopardy Clause protects an individual against more than being subjected to double punishments. It is a guarantee against being twice put to *trial* for the same offense.

' "The Constitution of the United States, in the Fifth Amendment, declares 'nor shall any person be subject [for the same offense] to be twice put in jeopardy of life or limb.' The prohibition is not against being twice pun-

ished, but against being twice *put* in jeopardy...." ... The "twice put in jeopardy" language of the Constitution thus relates to a potential, i.e., the risk that an accused for a second time will be convicted if the "same offense" for which he was initially tried.' *Price v. Georgia,* 398 U.S. 323, 326 [90 S.Ct. 1757, 1759, 26 L.Ed.2d 300] (1970).

See also *United States v. Jorn,* 400 U.S. 470, 479 [91 S.Ct. 547, 554, 27 L.Ed.2d 543] (1971); *Green v. United States,* 355 U.S. 184, 187–188 [78 S.Ct. 221, 224, 2 L.Ed.2d 199] (1957); *United States v. Ball,* 163 U.S. 662, 669 [16 S.Ct. 1192, 1194, 41 L.Ed. 300] (1896). Because of this focus on the 'risk' of conviction, the guarantee against double jeopardy assures an individual that, among other things, he will not be forced, with certain exceptions, to endure the personal strain, public embarrassment, and expense of a criminal trial more than once for the same offense. It thus protects interests wholly unrelated to the propriety of any subsequent conviction. Mr. Justice Black aptly described the purpose of the Clause.

'The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.' *Green,* supra, [355 U.S.] at 187–188 [78 S.Ct. at 224].

Accord, *Breed v. Jones,* 421 U.S. 519, 529–530 [95 S.Ct. 1779, 1785–1786, 44 L.Ed.2d 346] (1975); *Serfass v. United States,* 420 U.S. 377, 387–388 [95 S.Ct. 1055, 1062, 43 L.Ed.2d 265] (1975); *Jorn* [400 U.S.], supra, at 479 [91 S.Ct. at 554]. Obviously,

---

**2.** This holding of *Trillo* was not overruled by *Aguilar v. State,* 621 S.W.2d 781, 785 (Tex.Cr. App.1981).

**3.** "After indictment found in any felony case, and before conviction, the writ must be made returnable in the county where the offense has been committed."

these aspects of the guarantee's protection would be lost if the accused were forced to 'run the gauntlet' a second time before an appeal could be taken; even if the accused is acquitted, or, if convicted, has his conviction ultimately reversed on double jeopardy grounds, he has still been forced to endure a trial that the Double Jeopardy Clause was designed to prohibit. Consequently, if a criminal defendant is to avoid exposure to double jeopardy and thereby enjoy the full protection of the Clause, his double jeopardy challenge to the indictment must be reviewable before that subsequent exposure occurs." 431 U.S. at 660–662, 97 S.Ct. at 2040–2041 (footnotes omitted).

Despite this language, it has been said that *Abney* was not grounded on a constitutional provision because the case turned on the construction of a federal statute. *Spradling v. State,* 634 S.W.2d 89, 90 (Tex.App. —Beaumont, no petition).[4] Such a view has become untenable in light of *United States v. Hollywood Motor Car Co.,* —— U.S. ——, 102 S.Ct. 3081, 73 L.Ed.2d 754 (1982), in which the Court clarified *Abney.* It found "[p]erhaps most important among the relevant factors" in *Abney* was the constitutional right not to be *exposed* to double jeopardy, which would be significantly undermined by postponement of review until after conviction. —— U.S. at ——, 102 S.Ct. at 3083. The Court noted that this

was a constitutional right " 'the legal and practical value of which would be destroyed if it were not vindicated before trial. * * * [T]he protection afforded by the Double Jeopardy Clause . . . encompass[es] a "right not to be tried" which must be upheld prior to trial if it is to be enjoyed at all.' " —— U.S. at ——, 102 S.Ct. at 3084, quoting *United States v. McDonald,* 435 U.S. 850, 860–861, 98 S.Ct. 1547, 1552–1553, 56 L.Ed.2d 18 (1978).[5]

We are compelled to hold that there is a Fifth Amendment right not to be exposed to double jeopardy, and that it must be reviewable before that exposure occurs. The appellant has invoked the proper procedure to challenge one of the incidents of such exposure.[6] This court has jurisdiction of the appeal.[7] Therefore, we must consider its merits.

The appellant recognizes that the discharge of an accused adult at an examining trial has never been thought to bar an indictment by the grand jury. *Ex parte LeBlanc,* 577 S.W.2d 731, 733 (Tex.Cr.App. 1979) ("[I]t is not uncommon nor [sic] improper for a grand jury to return an indictment against an adult discharged at an examining trial . . ."). *Accord, Ex parte Spencer,* 579 S.W.2d 242, 244 (Tex.Cr.App. 1979). *Cf.* V.A.C.C.P. Articles 11.56 & 11.57 (person who is discharged on habeas corpus

**4.** The actual holding of *Spradling*—that the court of appeals had no jurisdiction of an appeal from an interlocutory order which overruled his pretrial plea of former conviction— was correct. Spradling failed to use the writ of habeas corpus procedure which this applicant has used.

**5.** We also note that on February 22, 1982, a majority of the Court expressed their views on the constitutional significance of *Abney.* In *Spradling v. Texas,* 455 U.S. 971, 102 S.Ct. 1482, 71 L.Ed.2d 686, Justices Brennan and Marshall dissented from the denial of the petition for certiorari, saying that while the Court did not need to reach the constitutional question in *Abney,* it "surely has significant constitutional overtones." 455 U.S. at 973, 102 S.Ct. at 1483. (As we have said in n. 4, ante, the *Spradling* decision stood on independent grounds of state procedure, and the petition for certiorari was denied properly.)

Simultaneously, in *Green v. Ohio,* 455 U.S. 976, 102 S.Ct. 1486, 71 L.Ed.2d 688, Justices White, Blackmun, and Powell dissented from the denial of a petition for certiorari to review an interlocutory appeal of a double jeopardy claim. They quoted *Abney* on the need for pretrial review to prevent the Double Jeopardy Clause from being significantly undermined, and they said, "*Abney* was not, by its terms, limited to federal cases. . . ." 455 U.S. at 979, 102 S.Ct. at 1487.

**6.** See n. 3 and accompanying text, and n. 4, ante.

**7.** Tex.Const. art. V, § 5 (1978), and the former version of V.A.C.C.P. art. 44.34 (1973 Tex. Gen.L. [regular session] ch. 465, § 1), gave this court jurisdiction of this habeas corpus appeal. If taken today, the appeal would be to a court of appeals. Tex.Const. art. V, § 6; V.A.C.C.P. art. 44.34.

before indictment may not be again imprisoned or detained in custody for the same offense until he is indicted). He argues that the question must be reexamined under the doctrine of collateral estoppel, "[which] is a fairly new application of double jeopardy concepts...." Appellant's Brief at 4. He claims that the magistrate's finding of "no probable cause"[8] conflicts with the grand jury's subsequent indictment.[9] We do not hold the doctrine of collateral estoppel to be applicable.

██ As embodied in the Fifth Amendment's guaranty against double jeopardy,[10] " '[c]ollateral estoppel' is an awkward phrase, but it stands for an extremely important principle in our adversary system of justice. It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson,* 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970). In *Ashe,* that principle was violated when a defendant who had been acquitted of armed robbery of a poker player, evidently because the evidence of identification was insufficient, was prosecuted a second time for armed robbery of another player in the same poker game. There had been in the first trial a valid and final judgment which determined an issue of ultimate fact—whether Ashe was one of the men who robbed the poker players.

In this case, to begin with, the appellant has not been put in jeopardy by being given an examining trial. *Ex parte Porter,* 16 Tex.App. 321 (1884). Insofar as the doctrine of collateral estoppel on which he relies is but a corollary of the Double Jeopardy Clause, the fact that he has not been put in jeopardy has significance.

Further, there has not been a "final judgment" in this case. *Ashe v. Swenson,* 397 U.S. at 443, 90 S.Ct. at 1194. The discharge at the examining trial was not a final judgment.

Finally, the grand jury's return of an indictment against the appellant was not a "future lawsuit between the same parties" in which an "issue ... again [was] litigated," *Ashe v. Swenson,* 397 U.S. at 443, 90 S.Ct. at 1194.

Therefore, we hold that the Fifth Amendment doctrine of collateral estoppel would not be violated by the appellant's being prosecuted, and he is not unlawfully restrained. The order denying habeas corpus relief is affirmed.

██

---

**8.** In an examining trial, the magistrate "shall proceed to examine into the truth of the accusation made...." V.A.C.C.P. art. 16.01. The evident standard is probable cause. *See* V.A.C.C.P. art. 16.17: "Failure of the judge to make or enter an order within 48 hours after the examining trial has been completed operates as a finding of no probable cause and the accused shall be discharged."

**9.** Although no standard, whether of probable cause or otherwise, is imposed on the grand jury by Constitution (art. 1, § 10) or statute (V.A.C.C.P. art. 20.09), it has been held that "the return of a true bill by the grand jury satisfies the principal purpose and justification for [an examining trial]—[the determination] that there is probable cause to believe the accused committed the crime charged." *Brown v. State,* 475 S.W.2d 938, 946 (Tex.Cr.App. 1972).

**10.** The Court also has considered collateral estoppel issues solely in terms of Fourteenth Amendment due process—whether a subsequent prosecution "led to fundamental unfairness." *Hoag v. New Jersey,* 356 U.S. 464, 467, 78 S.Ct. 829, 832, 2 L.Ed.2d 913 (1958). The appellant has not made such an argument possibly because that standard is harder for him than that of the Fifth Amendment. *See Ashe v. Swenson,* 397 U.S. 436, 442–443, 90 S.Ct. 1189, 1193–1194, 25 L.Ed.2d 469 (1970).