11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Melvin
Allan Bowen

Appellant

Vs.                   No. 11-02-00350-CR B
Appeal from Brown County

State
of Texas

Appellee

 

Melvin Allan Bowen was indicted for the offense of
kidnapping.  The trial court granted a
mistrial to appellant in his first trial. 
To prevent a second trial, appellant sought a pretrial writ of habeas
corpus in a separate action on the ground of double jeopardy under the
Constitutions of the United States and Texas.[1]  Citing Bauder v. State, 921 S.W.2d 696
(Tex.Cr.App.1996), appellant claimed that the prosecutor had intentionally or
recklessly forced him to move for the mistrial. 
The trial court denied his application for writ of habeas corpus, and
appellant did not appeal that order. 
Appellant was convicted in the second jury trial of unlawful restraint,
a lesser included offense of kidnapping. 
In his only issue on appeal, appellant again contends that his second
trial was barred by double jeopardy because of prosecutorial misconduct during
the first trial.  We affirm.

                                                                Background
Facts








The victim of the alleged kidnapping was a
four-month-old baby girl.  Appellant was
the father of the victim; however, the parental rights of appellant and of Lori
Ja Hunt, the mother, had been terminated in an earlier proceeding brought by
Linda Stewart and her husband.  That
proceeding had been filed by the Stewarts to adopt the victim.  Appellant=s
sister, Cynthia Wade, and her husband also wanted to adopt the baby and had
intervened in that proceeding.  The
alleged kidnapping occurred before the trial court determined who should adopt
the baby.  The trial court had
temporarily selected the Stewarts to have primary custody and the Wades to have
visitation rights on weekends.  Appellant
took the baby, without either the Stewarts=
or the Wades= consent,
while she was with the Wades during a weekend visit.  The trial court ultimately approved her
adoption by Linda Stewart and her husband. 

During the first trial, the prosecutor called
Linda Stewart who testified about the termination of appellant=s parental rights and her adoption of
the child.  Appellant=s attorney cross-examined Linda Stewart
about the order of termination.  The prosecutor
objected to the line of inquiry, contending that any testimony that went behind
the earlier order of termination was irrelevant to the kidnapping trial.  The trial court overruled the prosecutor=s objection, and appellant=s counsel then asked Linda Stewart:

[D]o
you remember who that other person was that was mentioned in court that
[appellant] voluntarily left his child with? 

 

Linda Stewart replied that A[appellant]
did not voluntarily leave his child with anyone because he was in prison at the
time.@  Appellant objected to her answer, contending
that it was non-responsive and that it introduced evidence of extraneous
offenses.  The trial court instructed the
jury to disregard the answer, but denied appellant=s
request for a mistrial.

After three more witnesses for the State
testified, the prosecutor called Sergeant Bryan Thompson, an investigator for
the Brown County Sheriff=s
Office.  In response to the prosecutor=s questions, Sergeant Thompson
testified about the events that led to the officers finding appellant in
possession of the child.  The prosecutor=s next question was:  AWhat
happened then?@  Sergeant Thompson replied: AWe placed him under arrest for
outstanding parole violation warrant.@  Appellant objected to the response as being a
violation of his motion in limine concerning extraneous offenses.  Moving for a mistrial, appellant argued that
the combination of the earlier testimony by Linda Stewart that appellant Awas in prison@
with Sergeant Thompson=s
answer so prejudiced appellant=s
rights that an instruction to disregard would not cure the prejudicial effect
of Sergeant Thompson=s
answer. The trial court granted appellant=s
motion for a mistrial and, subsequently, denied his application for writ of
habeas corpus in a separate action.

In the second trial, the jury convicted appellant
of unlawful restraint, a lesser included offense of kidnapping.  The conviction was enhanced by prior
convictions to a second degree felony. 
Appellant=s
punishment was assessed at confinement for 20 years and a $10,000 fine. 








                                                                        Analysis

The record reflects that appellant did not raise
his double jeopardy objection in this case in the trial court.  Prior to this second trial, however,
appellant did seek a pretrial writ of habeas corpus in a separate action,
urging double jeopardy on the same ground that he urges in this appeal.  A defendant may in a pretrial writ of habeas
corpus proceeding raise and appeal a successive prosecutions claim before the
trial of the indictment which he attacks. 
Gonzalez v. State, 8 S.W.3d 640, 643 n.9 (Tex.Cr.App.2000). The
court in Ex parte Robinson, 641 S.W.2d 552 (Tex.Cr.App. 1982),
emphasized that a pretrial writ under Chapter 11 of the Texas Code of Criminal
Procedure[2]
is the mechanism to be utilized in seeking relief from exposure to double
jeopardy because the claim of double jeopardy must be reviewable before that
exposure occurs.  Ex parte Robinson,
supra at 553-55.  A record of the
trial court=s hearing
on appellant=s
application for writ of habeas corpus was filed with the record in this
case.  Appellant did not appeal the trial
court=s denial
of his writ of habeas corpus. 

We hold that it is too late for appellant to raise
the concept of double jeopardy with this court. 
The cases of Gonzalez v. State, supra, and Casey v.
State, 828 S.W.2d 214 (Tex.App. B
Amarillo 1992, no pet=n),
are instructive on when an appellant may raise double jeopardy for the first
time on appeal.  As the Gonzalez
court pointed out:

[A]
double jeopardy claim may be raised for the first time on appeal or even for
the first time on collateral attack when the undisputed facts show the double
jeopardy violation is clearly apparent on the face of the record and when
enforcement of usual rules of procedural default serves no legitimate state
interests.  Cases such as  Shaffer v. State[3]
and Ex parte Evans[4]
illustrate these principles.

 

Gonzalez v. State, supra at 643. 








Here, the facts on which appellant bases his
double jeopardy claim are clearly apparent on the face of the record; however,
the enforcement of the usual rules of procedural default serve a legitimate
state interest in this case.  The same
trial judge presided over appellant=s
first trial, denied appellant=s
application for writ of habeas corpus based on double jeopardy in the separate
action, and presided over appellant=s
second trial.  Appellant could have filed
an immediate appeal of the trial court=s
denial of his application for writ of habeas corpus. Gonzalez v. State,
supra at 643 n.9; Ex parte Robinson, supra at 553-55.

If an appellate court had found that his double
jeopardy claim was true, that would have precluded the waste of holding an
unneeded second trial.  See Shaffer
v. State, supra at 875-76. 
The State has a valid interest in conserving valuable judicial time by
not going through unnecessary trials when a double jeopardy claim is
valid.  Gonzalez v. State, supra
at 646; Casey v. State, supra at 218.  Requiring appellant to have timely pursued
the appeal of his double jeopardy claim serves legitimate state interests and
is consistent with the underlying policies of the general rules of procedural
default.  Gonzalez v. State, supra at
645.  Because appellant could have
appealed from the denial of his application for writ of habeas corpus, we hold
that it is too late for appellant to again raise the concept of double jeopardy
in this appeal.  

Even assuming that the issue of double jeopardy
were before us, we find that appellant has not shown that prosecutorial
misconduct caused the mistrial.  As in
the habeas corpus hearing, appellant simply points out that Sergeant Thompson=s testimony followed the chronology of
events related in his written report and that the written report noted that
Sergeant Thompson arrested appellant on the basis of a parole violation
warrant.  Based on the similar chronology
of the testimony and the report, appellant argues that the prosecutor knew that
Sergeant Thompson would make the response he did when asked:  AWhat
happened then?@  Appellant also points out that the prosecutor
failed to admonish the State=s
witnesses about appellant=s
motion in limine concerning extraneous offenses; therefore, the prosecutor must
have intended for Sergeant Thompson to give the non-responsive answer that he
gave. 








There is no evidence in the record that Sergeant
Thompson was looking at his report at the time or that the prosecutor was using
the report to ask his questions. 
Culpable intent on the part of the prosecutor cannot be inferred from
the fact that Sergeant Thompson was testifying about events chronologically and
that the events had been written down in his report chronologically.  Failure of the prosecutor to admonish the
State=s
witnesses as to the requirements of a motion in limine does not mean that the
prosecutor deliberately or recklessly caused the mistrial.  Negligent conduct or sloppiness on the part
of the prosecutor will not trigger double jeopardy protection. Ex parte
Peterson, 117 S.W.3d 804, 817 (Tex.Cr.App.2003).

In Ex parte Peterson, supra, the court
attempted to clarify the standards under which the Texas constitutional double
jeopardy provision, as explained in Bauder v. State, supra,
prohibits a retrial after the defense successfully requests a mistrial.  Appellate courts analyzing a double jeopardy
mistrial claim are to make the following three-part analysis:

(1)
Did manifestly improper prosecutorial misconduct provoke the mistrial?

 

(2)
Was the mistrial required because the prejudice produced from that misconduct
could not be cured by an instruction to disregard?

 

(3)
Did the prosecutor engage in that conduct with the intent to goad the defendant
into requesting a mistrial[5]
or with conscious disregard for a substantial risk that the trial court would
be required to declare a mistrial[6]?

 

Appellant had the burden of proof to present
sufficient evidence to prove his double jeopardy claim by a preponderance of
the evidence.  Ex parte Peterson,
supra at 818.  We cannot say from the
record that appellant proved that manifestly improper prosecutorial misconduct
provoked the mistrial.  We will defer to
the trial court=s
decision and assume that an instruction to disregard would not have cured the
problem caused by Sergeant Thompson=s
testimony although violations of evidentiary rules are generally curable with
an instruction to disregard.  State v.
Lee, 15 S.W.3d 921, 926 n.8 (Tex.Cr.App.2000).

Our decision rests primarily on the third part of
the analysis required by Ex parte Peterson, supra.  To determine whether the prosecutor
intentionally or recklessly caused the mistrial, the Peterson court
suggested some of the objective facts and circumstances that an appellate court
might consider in assessing the prosecutor=s
mens rea.  A review of those facts
and circumstances supports our conclusion that the prosecution did not
intentionally or recklessly cause the mistrial:








(1) Was the misconduct a reaction to abort the
trial that was Agoing
badly for the State@?  The record did not demonstrate that the trial
was Agoing
badly for the State,@
nor did it reasonably appear that appellant would likely have obtained an
acquittal in the first trial.

 

(2) Was the misconduct repeated despite
admonitions from the trial court?  The
defense counsel=s cross-examination
of Linda Stewart elicited the first reference to appellant being in
prison.   Sergeant Thompson=s non-responsive answer to the
prosecutor=s
question (AWhat
happened then?@) was
only the second reference to extraneous offenses.  

 

(3) Did the prosecutor provide a reasonable, Agood faith@
explanation for the conduct?  The
prosecutor argued that appellant=s
application for writ of habeas corpus should be denied because the prosecutor
was simply trying to have Sergeant Thompson 
Atell his
story@ by
asking him:  AWhat
happened then?@  The prosecutor=s
question, asked by trial lawyers in every trial, did not require the
non-responsive answer that Sergeant Thompson gave.

 

(4) Was the conduct Aclearly
erroneous@?  Asking AWhat
happened then?@ was not
clearly erroneous.

 

(5) Was there a legally or factually plausible
basis for the conduct, despite its ultimate impropriety?  Having Sergeant Thompson testify to the
chronology of events was a plausible basis for the prosecutor=s question.

 

(6) Were the prosecutor=s
actions leading up to the mistrial consistent with inadvertence, lack of
judgment, or negligence, or were they consistent with intentional or reckless
misconduct?  At most, the prosecutor was
negligent in failing to remind Sergeant Thompson of appellant=s motion in limine concerning
extraneous acts.  

 

Appellant has not carried his burden of
demonstrating that the prosecutor intentionally or recklessly caused the
mistrial.  We hold that the record fails
to show that prosecutorial misconduct caused the mistrial.

                                                                This
Court=s Ruling

The judgment of the trial court is affirmed.

 

TERRY McCALL

JUSTICE

January 15, 2004

Publish.  See
TEX.R.APP.P. 47.2(b).

Panel
consists of:  Arnot, C.J., and

Wright,
J., and McCall, J.











[1]U.S. CONST. amend. V; TEX. CONST. art. I, ' 14.





[2]TEX. CODE CRIM. PRO. ANN. ch. 11 (Vernon 1977 &
Supp. 2004).





[3]Shaffer v. State, 477 S.W.2d 873 (Tex.Cr.App.1971).





[4]Ex parte Evans,
530 S.W.2d 589 (Tex.Cr.App.1975).





[5]The standard set forth in Oregon v. Kennedy, 456
U.S. 667 (1982).





[6]The standard set forth in Bauder v. State, supra.