Opinion issued December 16, 2010



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00734-CR

———————————

Ex Parte Craig Allen Necessary, Appellant



 



 

On Appeal from the County Criminal Court at Law No. 4

Harris County, Texas



Trial Court Case No. 1700716

 



 

O P I N I O N

          Appellant
Craig Allen Necessary has been charged with assault against a person with whom
he had a dating relationship.  Based on
the same underlying factual allegations, Necessary has also been prohibited
from certain conduct relating to the complainant in a magistrate’s order for
emergency protection.  He sought pretrial
habeas corpus relief from prosecution, arguing that the Double Jeopardy Clause
of the Fifth Amendment applies.

We affirm the trial court’s judgment
denying habeas corpus relief.  We
conclude no double-jeopardy violation has occurred because the protective order
was not a criminal punishment and because jeopardy did not attach.

I.                 
Background

          This
is an appeal from the trial court’s denial of habeas corpus relief after
Necessary filed a pretrial petition for writ of habeas corpus.  See Tex. R. App. P. 31.  Appellant Craig Allen Necessary was charged by
information with the offense of assault against a person with whom he had a
dating relationship.  See Tex.
Penal Code § 22.01(a)(1), (b)(2) (Vernon Supp. 2010); Tex. Family Code § 71.0021(b) (Vernon 2009).  The information specifically alleged that
Necessary assaulted complainant L.M. by shoving her to the ground with his
hand, shoving her head into a wall with his hand, and choking her neck with his
hand.  A week later, the trial court was asked
to issue a magistrate’s order for emergency protection against Necessary.  See
Tex. Code Crim. Proc. Ann. art. 17.292
(Vernon Supp. 2010).  The trial court found
that complainant L.M. was a victim of the offense and designated her a
“protected individual.”  See id. art. 17.292(a)(1) (motion for
emergency protection may be issued on the request of “the victim of the
offense”).  The trial court also found that
Necessary was in a dating relationship relating to L.M.  The magistrate entered the requested form
order for emergency protection, which included the following boilerplate terms:

. . . IT IS HEREBY ORDERED,
pursuant to Article 17.292 of the Texas Code of Criminal Procedure that:

 

the Defendant is prohibited
from:

 

·       
committing family violence involving the Victim; 

·       
committing an act in furtherance of an offense under Section 42.071 [sic]
(Stalking) of the Texas Penal Code involving the Victim; 

·       
communicating directly with the Victim in a threatening or harassing
manner; 

·       
communicating a threat through any person to the Victim; 

·       
possessing a firearm, unless the person is a peace office, as defined by
Section 1.07, Penal Code, actively engaged in employment as a sworn, full-time
paid employee of a state agency or political subdivision;

·       
going to or near the residence of the Victim, specifically, within 200
feet of residence . . .

·       
going to or near the place of employment or business of the Victim, more
specifically within 200 feet of the place of employment . . . .       



See id. art.
17.292(c), (e).  The form order also
contained warnings specified by Code of Criminal Procedure:

A VIOLATION OF THIS ORDER BY
COMMISSION OF AN ACT PROHIBITED BY THE ORDER MAY BE PUNISHABLE BY A FINE OF AS
MUCH AS $4,000 OR BY CONFINEMENT IN JAIL FOR AS LONG AS ONE YEAR OR BY
BOTH.  AN ACT THAT RESULTS IN FAMILY
VIOLENCE OR A STALKING OFFENSE MAY BE PROSECUTED AS A SEPARATE MISDEMEANOR OR
FELONY OFFENSE.  IF THE ACT IS PROSECUTED
AS A SEPARATE FELONY OFFENSE, IT IS PUNISHABLE BY CONFINEMENT IN PRISON FOR AT
LEAST TWO YEARS.  

 

THE POSSESSION OF A FIREARM
BY A PERSON, OTHER THAN A PEACE OFFICER, AS DEFINED BY SECTION 1.07, PENAL
CODE, ACTIVELY ENGAGED IN EMPLOYMENT AS A SWORN, FULL-TIME PAID EMPLOYEE OF A
STATE AGENCY OR POLITICAL SUBDIVISION, WHO IS SUBJECT TO THIS ORDER MAY BE
PROSECUTED AS A SEPARATE OFFENSE PUNISHABLE BY CONFINEMENT OR IMPRISONMENT.

 

NO PERSON, INCLUDING A
PERSON WHO IS PROTECTED BY THIS ORDER, MAY GIVE PERMISSION TO ANYONE TO IGNORE
OR VIOLATE ANY PROVISION OF THIS ORDER. 
DURING THE TIME IN WHICH THIS ORDER IS VALID, EVERY PROVISION OF THIS
ORDER IS IN FULL FORCE AND EFFECT UNLESS A COURT CHANGES THE ORDER.     



See id. art.
17.292(g).

The day before his trial on the
assault charge, Necessary petitioned the trial court for a writ of habeas
corpus.  He argued that the Double
Jeopardy Clause of the Fifth Amendment precluded his prosecution on the assault
charge because the magistrate’s protective order already constitutes “an
adjudication of whether there was an offense committed as alleged in the
information” against him.  In response the
State argued that the magistrate’s order, which is specifically authorized by
the Code of Criminal Procedure, is civil in nature and does not adjudicate
guilt or impose punishment.  The trial
court denied relief, and Necessary appealed. 
On appeal he reurges his arguments that because of the magistrate’s
emergency protective order, the State is barred by “Double Jeopardy and
collateral estoppel double jeopardy” from prosecuting him for assault.

II.              
Standard of Review

A trial court’s denial of pretrial habeas
corpus relief based on double jeopardy is immediately appealable.  See
Ex parte Robinson, 641 S.W.2d 552,
555 (Tex. Crim. App. 1982).  Ordinarily,
we review the trial court’s denial of habeas corpus relief under an abuse of
discretion standard.  Ex parte Wheeler, 203 S.W.3d 317, 324
(Tex. Crim. App. 2006); Sandifer v. State,
233 S.W.3d 1, 2 (Tex. App.—Houston [1st Dist.] 2007, no pet.).  In reviewing the trial court’s decision to
grant or deny habeas corpus relief, we view the evidence in the light most
favorable to the trial court’s ruling.  Wheeler, 203 S.W.3d at 324; Sandifer, 233 S.W.3d at 2.  We afford almost complete deference to the
trial court’s determination of historical facts supported by the record,
especially when those factual findings rely upon an evaluation of credibility
and demeanor.  See Ex parte Martin, 6 S.W.3d 524, 526 (Tex. Crim. App. 1999); Sandifer, 233 S.W.3d at 2.  Likewise, we afford the same deference to the
trial judge’s rulings on applications of law to fact questions if the
resolution of those ultimate questions turns on an evaluation of credibility
and demeanor.  Sandifer, 233 S.W.3d at 2.  However,
if the resolution of those ultimate questions turns on an application of legal
standards, we review the determination de novo.  Id.  Because Necessary argues that the trial court
has misapplied the law in this instance, we review the denial of pretrial
habeas corpus relief de novo.  See id.

III.          
Double Jeopardy

The Double Jeopardy Clause of the
Fifth Amendment to the United States Constitution provides that no person shall
“be subject for the same offence to be twice put in jeopardy for life or
limb.”  U.S.
Const. amend. V.[1]  The Double Jeopardy Clause “protects against successive
prosecutions for the same offense after acquittal or conviction and against
multiple criminal punishments for the same offense.”  Monge
v. California, 524 U.S. 721, 727–28, 118 S. Ct. 2246, 2250 (1998); Weinn v. State, No. PD-0338-09, 2010 WL
2595009, *2 (Tex. Crim. App. June 30, 2010). 
The Clause does not prohibit the imposition of all additional sanctions
that could be commonly considered as punishment.  Hudson
v. United States, 522 U.S. 93, 98–99, 118 S. Ct. 488, 493 (1997).  Rather, it “protects only against the
imposition of multiple criminal
punishments for the same offense.”  Id. at 99, 118 S. Ct. at 493 (citing Helvering v. Mitchell, 303 U.S. 391,
399, 58 S. Ct. 630, 633 (1938)).

“Whether a particular punishment is
criminal or civil is, at least initially, a matter of statutory construction.”  Id.
(citing Helvering, 303 U.S. at 399,
58 S. Ct. at 633).  A court must first
ask whether the legislature, ‘in establishing the penalizing mechanism,
indicated either expressly or impliedly a preference for one label or the
other.’”  Id. (quoting United States v.
Ward, 448 U.S. 242, 248, 100 S. Ct. 2636, 2641 (1980)).  If the court determines that the legislature
intended the punishment to be civil, it still must consider whether the
statutory scheme was so punitive either in purpose or effect as to transform
what was clearly intended as a civil remedy into a criminal penalty.  See id.
 This two-part analysis has been referred
to as the “intent-effects test.”  See Rodriguez v. State, 93 S.W.3d 60, 67
(Tex. Crim. App. 2002) (applying Hudson
to determine whether a statute imposed a criminal punishment for purposes of ex
post facto analysis).  We employ the
intent-effects test to determine whether that punishment was criminal in nature
so as to trigger double-jeopardy concerns.

A.              
Legislative
intent

To the extent the magistrate’s
order can be considered a punishment, article 17.292 of the Texas Code of
Criminal Procedure contains no express indication of any legislative intention
that the statutory provisions constitute a criminal penalty.[2]  The statute authorizes a magistrate to enter
an order for emergency protection at a defendant’s appearance before a magistrate
after an arrest for an offense involving family violence or certain other
listed offenses.  Tex. Code Crim. Proc. Ann. art. 17.292.  Within guidelines contained in the statute, the
order may prohibit the arrested party from engaging in specified activities in
relation to a “person protected by the order,” including committing further
assaults on a protected person, threatening or harassing a protected person’s
household, going to or near certain locations where the protected persons may
be found such as their residences and places of employment, and from possessing
a firearm.  Id. art. 17.292(c)(1)(A), (c)(2), (c)(3).  The order may also include prohibitions not
directly linked to a person protected under the order, including any act in
furtherance of an offense under Penal Code section 42.072 (stalking) and
possessing a firearm (unless the person is a peace officer).  Id.
art. 17.292(c)(1)(B), (c)(4).  The
statute requires that the order state that a violation may be punished by a
fine or confinement in jail, and it identifies other criminal penalties for the
violation of the emergency protective order. 
Id. art. 17.292(g).

The statute providing for a
magistrate’s order for emergency protection is fully consistent with the Legislature’s
prior express acknowledgement, codified in a separate part of the Code of
Criminal Procedure, that “[f]amily violence is a serious danger and threat to
society and its members,” and that “[v]ictims of family violence are entitled
to the maximum protection from harm or abuse or the threat of harm or abuse as
is permitted by law.”  Tex. Code Crim. Proc. Ann.
art. 5.01(a) (Vernon 2005).  The
Legislature has expressed its desire that “[i]n any law enforcement,
prosecutorial, or judicial response to allegations of family violence, the
responding law enforcement or judicial officers shall protect the victim,
without regard to the relationship between the alleged offender and
victim.”  Id. art. 5.01(b).

Moreover, we note that
article 17.292 authorizes the issuance of protective orders “after arrest
for an offense involving family violence,” but before there has been any
conviction for such an offense.  It is an
axiom of due process that until proven guilty of an offense beyond a reasonable
doubt, all persons are presumed innocent and therefore cannot be convicted of
or punished for the offense.  See, e.g., Tex. Code Crim. Proc. Ann. art. 38.03 (Vernon Supp. 2010);
In re Winship, 397 U.S. 358, 363–64,
90 S. Ct. 1068, 1072–73 (1970); Villarreal
v. State, 286 S.W.3d 321, 327 (Tex. Crim. App.), cert. denied, 130 S. Ct. 515 (2009).  We do not read article 17.292 to suggest
otherwise, as the Legislature necessarily would have done if it authorized a
criminal punishment after arrest but before a conviction for an offense.

Necessary provides no evidence of a
punitive intent inherent in this statute, and based on our independent
analysis, we find none.  See State
v. Collazo, 264 S.W.3d 121, 129 (Tex. App.—Houston [1st Dist.] 2007, pet.
ref’d).  We thus conclude that the text
and structure of article 17.292 demonstrate a legislative intent that the
emergency orders authorized by that statute are for the purpose of protecting
putative victims of family violence, and not for the purpose of imposing a
criminal punishment.[3]

B.              
Statutory
effects

Having concluded that the
Legislature intended article 17.292 to create a civil remedy, we must
consider “whether the statutory scheme [is] so punitive either in purpose or
effect as to transform what was clearly intended as a civil remedy into a
criminal penalty.”  Hudson, 522 U.S. at 99, 118 S. Ct. at 493.  Only the clearest proof that the purpose and
effect of the restraining order are punitive will suffice to override a manifest
legislative preference for a civil sanction. 
See, e.g., United States v. One Assortment of 89 Firearms, 465 U.S. 354, 365,
104 S. Ct. 1099, 1106 (1984).  Relevant
considerations for the evaluation of punitive effects of an otherwise civil
penalty, commonly referenced as the Kennedy
factors, include:

Whether the sanction involves an affirmative
disability or restraint, whether it has historically been regarded as a
punishment, whether it comes into play only on a finding of scienter, whether
its operation will promote the traditional aims of punishment—retribution
and deterrence, whether the behavior to which it applies is already a crime,
whether an alternative purpose to which it may rationally be connected is
assignable for it, and whether it appears excessive in relation to the
alternative purpose assigned . . . .

Kennedy v.
Mendoza-Martinez, 372 U.S. 144, 168—69, 83 S. Ct. 554, 567—68 (1963);
see also Rodriguez v. State, 93 S.W.3d 60, 68 (Tex. Crim. App. 2002); Collazo, 264 S.W.3d at 130.  We consider the effects of an emergency
protective order authorized by article 17.292 under each of these factors
in turn.

1.    
Affirmative
disability or restraint

The emergency protective order at
issue imposes affirmative restraints on Necessary’s conduct, though they are substantially
redundant of existing laws already applicable to him proscribing the commission
of crimes.  For example, the order
prohibits Necessary from committing family violence, stalking the subjects of
the order, and threatening or harassing them. 
Regardless of the emergency protective order, this conduct is proscribed
by law, and an order prohibiting Necessary from engaging in such conduct cannot
be considered a meaningful restraint.  See Tex.
Penal Code Ann. §§ 22.01 (assault), 42.072 (stalking), 42.07 (harassment)
(Vernon 2003 & Supp. 2010); see also
Tex. Code Crim. Proc. Ann. art.
42.013 (Vernon 2006) (requiring court to make affirmative finding of family
violence); Tex. Fam. Code Ann. §
71.004 (Vernon 2008) (defining family violence).

While the order also precludes
Necessary from possessing a firearm, that restraint is “certainly nothing
approaching the ‘infamous punishment’ of imprisonment.”  Hudson,
522 U.S. at 104, 118 S. Ct. at 496. 
Thus, we conclude that this factor does not weigh heavily in favor of
finding the statute to be criminally punitive.

2.    
Historical
treatment

As we have noted, protective orders
have historically been considered civil in nature and designed to prevent
family violence and protect the victims, to “hold things in abeyance while
final adjudication is pending” as the trial court observed.  This factor does not weigh in favor of a
finding that the magistrate’s order was criminally punitive.

3.    
Finding of
scienter

Article 17.292 does not include any
requirement of a culpable mental state. 
Rather, it includes only the requirement that the defendant was arrested
for an offense involving family violence. 
This factor does not weigh in favor of finding that the magistrate’s
order was criminally punitive.  See Collazo, 264 S.W.3d at 130.

4.    
Traditional
aims of punishment

“When a statute promotes the
traditional aims of punishment, retribution and deterrence, its effect is more
likely to be considered punitive.”  Rodriguez, 93 S.W.3d at 73 (citing Hudson, 522 U.S. at 104, 118 S. Ct. 488).  Here the statute serves to deter the
defendant from committing further acts of family violence by providing a
specific avenue for an additional criminal penalty, i.e., violation of the
protective order.  See Tex. Code Crim. Proc.
Ann. art. 17.292(g).  However, it
does not serve to deter others from emulating the defendant’s conduct, which is
one of the traditional goals of criminal punishment.  See
Hudson, 522 U.S. at 105, 118 S. Ct. at 496.  We conclude that any effects of the statute that
bear on the traditional goals of punishment are incidental and not
primary.  See Collazo, 264 S.W.3d at 130. 
This factor does not weigh heavily in favor of finding the order to be
criminally punitive.  See Hudson, 522 U.S. at 102, 118 S. Ct.
at 494 (“[A]ll civil penalties have some deterrent effect.”); Rodriguez, 93 S.W.3d at 73 (“Where the
legislature has not manifested an intent to promote the traditional aims of
punishment, it behooves us to refrain from searching for one in the statute’s
indirect effects.”).  

5.    
Application
to criminal behavior

A statute that applies to behavior
that is already a crime is more likely to be characterized as a criminal
sanction.  Rodriguez, 93 S.W.3d at 74; Collazo,
264 S.W. 3d at 130; see Kennedy, 372 U.S. at 168, 83 S. Ct. at
567.  Article 17.292 applies to behavior
that is already a crime and it specifically provides for further criminal
penalties for violating the protective order. 
While this weighs in favor of finding that the magistrate’s order, it is
not dispositive.  See United States v. Dixon, 509 U.S. 688, 704, 113 S. Ct. 2849,
2860 (1993) (rejecting “same-conduct” test for double-jeopardy purposes). 

6.    
Alternative
purpose

“Under this factor, we inquire
whether there is an alternative, nonpunitive purpose that may rationally be
connected to the statute.”  Rodriguez, 93 S.W.3d at 74 (citing Kennedy, 372 U.S. at 168–69, 83 S. Ct.
554, 567–68).  As we have discussed, the
primary purposes of this statute are to prevent family violence, protect
victims of family violence, and maintain the status quo while adjudication may
be conducted.  This factor weighs against
a conclusion that the statute is criminally punitive.

7.    
Excessiveness

Under this factor, we consider
whether the sanction imposed by the statute under consideration is “so grossly
disproportionate to the harm caused as to constitute ‘punishment.’”  Hudson,
522 U.S. at 101, 118 S. Ct. at 494 (cautioning that this issue is not
dispositive in double-jeopardy context). 
The sanction imposed by article 17.292 is limited in both time and in
relationship to the particular victim or victims named in the order.  Moreover, the magistrate’s order for emergency
protection serves a legitimate governmental interest in preventing domestic
abuse, protecting victims, and maintaining the status quo pending disposition
of the charges against the defendant. 
This factor does not weigh in favor of a conclusion that the statute is
criminally punitive.

*        *        *

Weighing all of the Kennedy factors, we conclude that
article 17.292 is civil in nature and not criminally punitive.  Therefore, we hold that prosecuting Necessary
for the underlying assault after the imposition of the magistrate’s order for
emergency protection does not implicate the multiple-punishments double-jeopardy
bar.

IV.          
Collateral
Estoppel

In addition to arguing that the
magistrate’s order was a criminal punishment, Necessary also argues that it was
based upon the same factual information that will be required to be proven upon
trial of the underlying offense.  Thus,
Necessary argues, a subsequent prosecution of the underlying offense is barred
by collateral estoppel double jeopardy.

“The doctrine of collateral
estoppel is a child of the constitutional protection against double
jeopardy.”  Ex parte Ueno, 971 S.W.2d 560, 562 (Tex. App.—Dallas 1998, pet.
ref’d) (citing Ladner v. State, 780
S.W.2d 247, 250 (Tex. Crim. App. 1989)).  

‘Collateral estoppel’ is an awkward phrase,
but it stands for an extremely important principle in our adversary system of
justice.  It means simply that when an
issue of ultimate fact has once been determined by a valid and final judgment,
that issue cannot again be litigated between the same parties in any future
lawsuit.

Ashe v.
Swenson, 397 U.S. 436, 443, 90 S. Ct. 1189, 1194 (1970).  Thus, “the traditional bar of double jeopardy
prohibits the prosecution of the crime itself, whereas collateral estoppel, in
a more modest fashion, simply forbids the government from relitigating certain
facts in order to establish the fact of the crime.”  Ladner,
780 S.W.2d at 253–54.

“There is no due process basis,
independent of the double jeopardy clause, for the application of collateral
estoppel.”  Ueno, 971 S.W.2d at 562 (citing Nichols
v. Scott, 69 F.3d 1255, 1269–70 (5th Cir. 1995)).  Therefore, to prevail on a theory of
collateral estoppel, Necessary must show that his complaint would protect him
from double jeopardy, which requires that he was previously placed in jeopardy.  See
Ueno, 971 S.W.2d at 562.  Jeopardy
attaches in a jury trial when the jury is empaneled and sworn, or, in the case
of a bench trial, when the defendant pleads to the indictment.  Ortiz
v. State, 933 S.W.2d 102, 105 (Tex. Crim. App. 1996).

Necessary asserts that the “State is barred from
litigating the facts already found and adjudicated by the trial court.”  This statement lacks support in the appellate
record.  Nothing in the record indicates
that there has been an adjudication of any facts in this case, that Necessary
pleaded to an indictment, or that a jury was ever empaneled.  Necessary has not been put to trial on the
facts of the underlying offense involving family violence.  “Because jeopardy never attached, double
jeopardy is not implicated.”  Ueno, 971 S.W.2d at 563.  Therefore, collateral estoppel provides no
relief for Necessary. 

CONCLUSION

          Having
concluded that article 17.292 is not criminally punitive and that jeopardy has
not yet attached in this case, we hold it was proper to deny Necessary’s
request for habeas corpus relief.  Accordingly,
we affirm the ruling of the trial court.

 

 

 

                                                                   Michael
Massengale

                                                                   Justice


 

Panel consists of Chief Justice Radack and Justices Massengale
and Cox.[4]

Publish.   Tex. R.
App. P. 47.2(b).











[1]           The
federal constitutional protection against double jeopardy has been held to be
sufficiently fundamental to fall within the guarantee of due process
established by §
1 of the Fourteenth Amendment.  See
McDonald v. City of Chicago, 130 S. Ct. 3020, 3061 (2010); Benton v. Maryland, 395 U.S. 784,
795–96, 89 S. Ct. 2056, 2063 (1969).  The
Texas Constitution also provides that “No person, for the same offense, shall
be twice put in jeopardy of life or liberty; nor shall a person be again put
upon trial for the same offense after a verdict of not guilty in a court of
competent jurisdiction.”  Tex. Const. art. I, § 14.  Because the
state constitutional right has not been invoked in this case, it is unnecessary
for us to address the protection afforded by the state constitution, including
whether or how that protection differs from the rights provided by the United
States Constitution.  Heitman v. State, 815 S.W.2d 681, 691
n.23 (Tex. Crim. App. 1991).

 





[2]
          Although the relevant statute has been codified as
part of the Code of Criminal Procedure, that factor is not dispositive of our
inquiry.  Cf. Fant v. State, 931 S.W.2d 299, 306–07 (Tex. Crim. App. 1996) (statutory
language providing for forfeiture of contraband under chapter 59 of the Code of
Criminal Procedure indicates the creation of a civil procedural mechanism, not
criminal punishment).

 





[3]
          We
also note that several Texas courts
have rejected Double Jeopardy challenges to criminal prosecutions following the
entry of family-violence protective orders authorized by similar statutory
provisions in the Family Code.  See, e.g., Harris v. State, 164 S.W.3d 775, 782 (Tex. App.—Houston [14th
Dist.] 2005, pet. ref’d) (“Certainly, the Legislature never intended a
protective order to constitute a ‘prosecution’ or a ‘punishment.’  In fact, it has authorized the issuance of a
protective order and the subsequent criminal prosecution for the same
underlying conduct.”); Ex parte Chairez,
No. 08-00-00083-CR, 2001 WL 63033, at *3 (Tex. App.—El Paso Jan. 25, 2001, no
pet.) (holding that the purpose of Family Code provisions authorizing
protective orders to prevent domestic violence was to “protect the victims, not
to punish the offenders”); Harren v.
State, No. 03-99-00752-CR, 2000 WL 766263, at *2 (Tex. App.—Austin June 15,
2000, no pet.) (“As the name implies, the purpose of a protective order is to
protect against future acts of family violence.”).  

 





[4]
          The
Honorable Lonnie Cox, Judge of the 56th District Court of Galveston County,
participating by assignment.