

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-16-00177-CR

_____

EX PARTE JOSUE REYNA

On Appeal from the 137th District Court
Lubbock County, Texas
Trial Court No. 2011-433,124; Honorable Bradley S. Underwood, Presiding

November 10, 2016

## MEMORANDUM OPINION

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

Appellant, Josue Reyna, appeals the trial court's order denying his *Pretrial Application for Writ of Habeas Corpus* contending he is being subjected to double jeopardy after his first trial ended in an order of mistrial. By a single issue, Appellant asserts the trial court erred in finding that a subsequent prosecution is not barred by double jeopardy because the State committed prosecutorial misconduct during the first trial when, in order to avoid a judgment of acquittal, it intentionally goaded him into requesting a mistrial. The State contends the trial court did not abuse its discretion

when it ruled that double jeopardy does not bar a subsequent prosecution because the State did not intentionally provoke the defense into requesting a mistrial. We affirm.

BACKGROUND

In November 2011, an indictment issued alleging that Appellant intentionally and knowingly committed the offense of aggravated assault[1] by threatening David Barron with imminent bodily injury while using or exhibiting a deadly weapon, to-wit: a firearm, during the commission of that assault. A jury trial commenced on May 4, 2015. On the fourth day of trial, Judge John J. (Trey) McClendon III granted a mistrial at Appellant's request. On January 28, 2016, Appellant filed his *Application for Writ of Habeas Corpus Seeking Relief from Double Jeopardy and Motion to Dismiss the Indictment Based Upon a Previous Mistrial.* Following a two-day hearing on the *habeas corpus* application, Judge Bradley S. Underwood denied Appellant any relief.[2] This appeal followed.

THE TRIAL

Appellant's jury trial was held May 4 through May 7, 2015, in the 137th District Court in Lubbock County with Judge McClendon presiding. Representing the State during trial were Assistant Criminal District Attorneys, Mandi Say and Jessica Schneider. Assisting Say and Schneider was Connie Gonzales, an investigator with the

---

[1] TEX. PENAL CODE ANN. § 22.02(a)(2) (West 2011). As applicable to this case, a person commits aggravated assault by intentionally or knowingly threatening another with imminent bodily injury while using or exhibiting a deadly weapon during the commission of that threat. *Id.* at § 22.02(a)(2). A firearm is a deadly weapon. *Id.* at § 1.07(a)(17)(A). As indicted, the offense was a second degree felony punishable by confinement of not more than twenty years or less than two years and by a fine not to exceed $10,000. *Id.* at § 12.33(a).

[2] Regional Administrative Judge Kelly Moore assigned Judge Bradley S. Underwood to the 137th District Court in Lubbock County to hear the *Application for Writ of Habeas Corpus*.

Criminal District Attorney's Office. Appellant was represented by Fred Stangl and Charles Blevins.

On May 5th or 6th, Gonzales became aware of the fact that the defense had subpoenaed Rudy Barron, Jr. as a defense witness.[3] When Gonzales checked Barron's background, she discovered that he had recently been incarcerated at the Lubbock County Detention Center. She further learned that, during his confinement, Barron made phone calls which were recorded by the jail's phone system vendor. The staff of the Criminal District Attorney's Office has access to those recorded calls, and Gonzales listened to the recording of a phone call from Barron to Raul Hernandez that occurred on May 3, 2015. On May 7, 2015, Gonzales notified Say and Schneider concerning the May 3rd jail call. After listening to portions of that call, Say believed that the participants were discussing matters that amounted to attempted witness tampering. She also believed that if Barron testified, he might subject himself to prosecution for perjury as well. Immediately prior to Barron testifying at trial, outside the courtroom, Say disclosed the existence of the recorded call and her position on its contents to Frank Sellers, an attorney appointed to represent Barron. Inside the courtroom, Say reported the existence of the jail call and her position on its contents to Stangl, Blevins, and Judge McClendon. Both Stangl and Sellers requested to listen to the jail call but Say refused, stating that she did not have to turn the recorded call over to the defense—citing first that the evidence was "rebuttal" and later that the evidence was "impeachment evidence." Judge McClendon originally ordered Say to turn over the jail

---

[3] At the time of trial, Barron was on felony community supervision.

3

call but, after discussions with all counsel in chambers, decided not to order its disclosure at that time.

During conversations both on the record in the courtroom and off the record in Judge McClendon's chambers, Say stated her position that both Barron and Hernandez may have committed the offense of attempted witness tampering. At this point, Stangl and Blevins realized Hernandez was a client of their law firm. Based on Say's representations that Hernandez was possibly committing a crime in order to assist Appellant, Stangl and Blevins believed a conflict of interest had arisen. Based on this perceived conflict, Stangl moved for a mistrial which Judge McClendon granted.

After the mistrial was granted, Appellant retained Rob Hobson. Hobson requested and received a copy of the May 3rd jail call in January 2016, prior to a new trial setting. After listening to the recorded jail call and after allowing Stangl and Blevins to listen to the call, Hobson filed Appellant's *Application for Writ of Habeas Corpus*.

*HABEAS CORPUS* HEARING

At the hearing on Appellant's *Application for Writ of Habeas Corpus*, two issues were presented. The first issue was whether the State had goaded the defense into asking for a mistrial. The second issue was whether the State committed a *Brady* violation[4] by failing to turn over a tape of the May 3rd jail call to the defense at trial.

At the hearing, Say testified that, based on the May 3rd jail call, she believed Barron and Hernandez were trying to concoct a story in order to get another witness to

---

[4] *See Brady v. Maryland,* 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

4

change her testimony to favor Appellant in contravention of the statement she gave to the police. Say also testified that she alerted Barron's attorney that she believed he was going to commit perjury on the stand, that she believed the trial was going well, and that she was fairly confident she would receive a guilty verdict. She testified she did not want a mistrial and "would never do anything to intentionally cause a mistrial." Schneider testified that the "State did not intend at any point in the trial to cause a mistrial." Judge McClendon testified that, at trial, he made "a specific finding that there wasn't any prosecutorial misconduct." He stated that "[b]ased on the information I had in front of me, there wasn't any prosecutorial misconduct."

On March 20, 2016, Judge Underwood issued a written opinion finding that the State committed prosecutorial misconduct by failing to turn over the May 3rd jail call to the defense prior to the request for a mistrial. In his findings, he found that "[o]ther than Applicant's 'but for' suppositions, there is no evidence that Ms. Say wanted a mistrial, while there was evidence to the contrary." He also found that the "Applicant failed to prove by a preponderance of the evidence that the misconduct was intentionally designed to goad the defense into seeking a mistrial." Consequently, Judge Underwood denied Appellant's *Application for a Writ of Habeas Corpus* and this appeal followed.

SUBJECT MATTER JURISDICTION

In the case of *Ex parte Robinson*, 641 S.W.2d 552 (Tex. Crim. App. 1982), the Texas Court of Criminal Appeals established that a pretrial writ of *habeas corpus* was an appropriate procedure to review an individual's claim of double jeopardy. The denial

of a pretrial writ of *habeas corpus* based on a claim of double jeopardy is an appealable order.  *See id.* at 555.  *See also* TEX. R. APP. P. 31.1.

STANDARD OF REVIEW

In reviewing a trial court's decision to grant or deny *habeas corpus* relief, we will uphold the trial court's ruling absent an abuse of discretion.  *Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex. Crim. App. 2003) (per curiam), *overruled on other grounds by Ex parte Lewis*, 219 S.W.3d 335 (Tex. Crim. App. 2007).  Therefore, in determining whether a trial court has abused its discretion, we view the evidence in the light most favorable to the trial court's ruling.  *Id.*  An abuse of discretion occurs when the decision of the trial court falls outside the zone of reasonable disagreement.  *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (on reh'g).  In other words, in order for there to be an abuse of discretion, the trial court's decision must be arbitrary, unreasonable, and made without deference to any guiding rules or principles.  *Id.*  In conducting our review, we afford almost total deference to the trial judge's determination of the historical facts that are supported by the record, particularly when those fact findings are based on the judge's evaluation of credibility and demeanor.  *Ex parte Peterson*, 117 S.W.3d at 819.  However, if the resolution of the ultimate questions turns on an application of legal standards, we review that determination *de novo.  Id.*

DOUBLE JEOPARDY

A defendant may not be twice put in jeopardy for the same offense.  U. S. CONST. amend. V; TEX. CONST. art. I, § 14; *Arizona v. Washington*, 434 U.S. 497, 503, 98 S. Ct. 824, 54 L. Ed. 2d 717 (1978).  When a jury is empaneled and sworn, jeopardy attaches. *Hill v. State*, 90 S.W.3d 308, 313 (Tex. Crim. App. 2002).  When jeopardy attaches, a

mistrial declared over the defendant's objection ordinarily bars further prosecution of the same offense. *Ex parte Garza*, 337 S.W.3d 903, 909 (Tex. Crim. App. 2011). However, double jeopardy does not bar the subsequent prosecution of the same offense when the mistrial is declared either with the defendant's consent or when it arises from a manifest necessity. *Hill*, 90 S.W.3d at 313. Furthermore, in cases where a defendant has successfully moved for mistrial based on prosecutorial misconduct, a retrial is not barred by double jeopardy unless the conduct in question was committed with the intent to provoke the defense into requesting a mistrial or with the intent to avoid an acquittal. *Ex parte Lewis*, 219 S.W.3d 335, 336 (Tex. Crim. App. 2007) (holding that the proper standard of review is the rule enunciated by the United States Supreme Court in *Oregon v. Kennedy*, 456 U.S. 667, 102 S. Ct. 2083, 72 L. Ed. 2d (1982)).

ANALYSIS

For the purposes of our analysis, we will assume a *Brady* violation occurred and the State engaged in prosecutorial misconduct without deciding the issue. That said, we cannot say Judge Underwood abused his discretion when he found that Appellant "failed to prove by a preponderance of the evidence that the misconduct was intentionally designed to goad the defense into requesting a mistrial." Apparently, Judge Underwood found the testimony of Say, Schneider, and Judge McClendon credible and worthy of weight. *Ex parte Peterson*, 117 S.W.3d at 819. Moreover, Appellant has received disclosure of the taped conversation and a new trial will be set— both appropriate remedies for the assumed *Brady* violation. *See Wilson v. State,* 7 S.W.3d 136, 146 (Tex. Crim. App. 1999) ("To prevail on a *Brady* claim, appellant must

show that the State's tardy disclosure prejudiced him.").  Accordingly, Appellant's single issue is overruled.

CONCLUSION

The trial court's order is affirmed.

Patrick A. Pirtle
Justice

Do not publish.